218 N.J. Super. 360 (1987)
527 A.2d 928
LOUISE AUGER AND AUJ SECURITY DOG SERVICE, INC., PLAINTIFFS-RESPONDENTS,
v.
THE GIONTI AGENCY, DEFENDANT-APPELLANT, AND THE SELECT WAY BUDGET PLAN, INC., DEFENDANT, AND THE HARTFORD INSURANCE COMPANY, DEFENDANT-THIRD PARTY PLAINTIFF-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted March 25, 1987.
Decided July 1, 1987.
*362 Before Judges DREIER, SHEBELL and STERN.
Knapp & Blejwas, attorneys for appellant (Peter M. Blejwas on the brief).
Harwood, Lloyd, Ryan, Coyle & McBride, attorneys for respondent Hartford Insurance Company (Anthony M. Carlino on the brief).
Brief on behalf of respondents Auger and AUJ Security Dog Service, Inc., suppressed.
The opinion of the court was delivered by STERN, J.A.D.
Defendant Gionti Agency (hereinafter Gionti) appeals from an order directing a verdict in favor of plaintiff against it "limited to the provisions of the Hartford Insurance Policy."[1] The order was based on the court's determination at the end of the trial of plaintiff's case against Gionti that Gionti as "the agent of the insured, had a responsibility to advise her that she had no insurance...."
Gionti also appeals from an order granting The Hartford Insurance Company's pretrial motion for summary judgment against Gionti. The motion was granted on the grounds that the Hartford policy had been cancelled in conformity with N.J.S.A. 17:16D-13 and because Gionti was not the agent of Hartford "for the collection of premiums" due.[2]

*363 I
In 1983 plaintiff Louise Auger ran a professional dog and animal training business under the name AUJ's Security Dog Service, Inc. In January 1983 Eugene Gionti, a licensed insurance broker and the owner of the Gionti Agency,[3] obtained an automobile liability policy for plaintiff through the assigned risk plan. Gionti arranged for financing by The Select Way Budget Plan, Inc. (Select Way). Two general liability policies for plaintiff were also financed under the same finance agreement with Select Way.
Plaintiff made an initial payment on the automobile insurance policy, and the remaining premium was to be paid in nine monthly installments due on the tenth of each month, beginning March 10, 1983. Plaintiff Louise Auger's signature was on the premium finance agreement, which recites that the insured agreed
[t]o appoint Select/Way Attorney in Fact. This appointment means that Select/Way may legally request cancellation of said policies in the event a payment is not received.[4]
On April 19, 1983 Select Way mailed to plaintiff a notice of intent to cancel based on her failure to make the payment due on April 10, 1983. The notice stated that "Payment of the amount which was due has not been received. It will be necessary for us to ask for cancellation of your insurance unless payment is in this office by 4/29/83." Not having received the payment, on May 6, 1983 Select Way sent a cancellation notice to plaintiff and, through an affiliate, to the *364 Hartford indicating that the "cancellation date" was May 11, 1983. The reverse side of the notice read:
Please cancel the described policy(ies) on the date shown, or as soon as statutory, regulatory or contractual requirements permit, and send the gross return premium to Select/Way Budget Plan, Inc. for proper distribution.
The insured and agent have been given (10) ten-days notice of our intent to cancel.
The authority for this request has been given in the duly authorized Power of Attorney signed by the insured and as authorized in accordance with any state statutory, regulatory or contractual provisions.
Plaintiff admitted that she received a notice in April 1983 indicating the policy would be cancelled if payment was not received by May 11, 1983.[5] She claimed she spoke to Gionti and that he told her that she would have to have the money in before May 11 and that he would like it "a couple days before." Plaintiff indicated that the notice did not state that payment had to be made before May 11, 1983 and that she always "depended on" Gionti for advice regarding her insurance problems. According to plaintiff, on May 8, 1983 the payment was hand-delivered to Gionti, whose office was "just around the corner" from plaintiff's. Plaintiff maintained that it was "common" for her to give Gionti her premium checks instead of forwarding them to the insurance carrier.
Gionti testified that he called plaintiff on May 9 with reference to her fire insurance policy but also mentioned that the automobile insurance finance payment had to be received by Select Way "prior to the cancellation date." Plaintiff asked for his copy of the notice explaining that she could not locate hers. Gionti claimed that his office received plaintiff's check made payable to Select Way from one of her employees on May 10, 1983, that plaintiff requested him to mail it to Select Way, and that his office mailed it to Select Way that day. However, Gionti did nothing to let Select Way know that he had received *365 the payment prior to the cancellation date. Gionti testified that he advised plaintiff on May 9 that the coverage would be terminated "until the payment is accepted" by Select Way, and that he did nothing, as plaintiff's broker, "to assure that the payment would be received at Select Way before the cancellation date." Nor did Gionti ever call to see if the check was received by Select Way.
Select Way received the payment on May 12 and on the same day sent out a reinstatement request to Hartford, asking for reinstatement as of May 11, 1983. Copies of the request form were sent to plaintiff and Gionti. The form indicated "this request is made subject to your [the insurer's] approval" and advised the insurer, "In the event you do not elect to reinstate the policy(ies) kindly send us your remittance for the gross unearned premium and please advise the insured immediately of the status of his policy" (Emphasis in original).[6] On May 12 Select Way credited plaintiff's payment to her account; the check was not returned.
By memo dated June 23, 1983 Hartford advised Select Way that the request for reinstatement was denied.[7] Until that time Select Way assumed that the policy was still in effect.
Based on the reinstatement request, Gionti assumed that the policy would be reinstated. However, on June 2, 1983 Gionti received a premium adjustment notice from Hartford adjusting the premium as of the cancellation date. He called Hartford to find out why it was adjusting the premium, and on June 3 was advised that it would not reinstate the policy. He was told that the "procedure was that they would never reinstate a policy that a premium finance plan cancelled." He had never before *366 been apprised of this policy and had never encountered a situation where an insurer refused to reinstate after late payment had been made under a premium finance agreement. Moreover, it was his experience that a "regular policy" would not be cancelled if payment was received "by the company" prior to the effective date of cancellation.
After his conversation with Hartford, Gionti advised plaintiff that her coverage had not been reinstated and that she should immediately obtain new coverage which she subsequently obtained from Hartford through the assigned risk plan. Gionti also wrote to Hartford objecting to its refusal to reinstate the policy. Gionti first received written notice from Hartford that it was not reinstating the policy on July 18.
On May 25, 1983 plaintiff was involved in an automobile accident. According to plaintiff between May 9 and 25, 1983 no one had advised her that she did not have automobile liability insurance, and during that period she had not been advised by Gionti to obtain another policy. When plaintiff first spoke to Gionti after her week or week-and-a-half long stay in the hospital following the accident, he did not advise her that she no longer had a policy. However, he did advise her in early June that the policy was not in effect. She claimed she had never previously had a policy cancelled for nonpayment. She explained, "Mr. Gionti and any insurance agency I had prior to that have always indicated to me that there was a 30 day grace period. And he accepted my payment."

II
We are satisfied that the directed verdict against Gionti was appropriate. As stated in Rider v. Lynch, 42 N.J. 465 (1964),
One who holds himself out to the public as an insurance broker is required to have the degree of skill and knowledge requisite to the calling. When engaged by a member of the public to obtain insurance, the law holds him to the exercise of good faith and reasonable skill, care and diligence in the execution of the commission. He is expected to possess reasonable knowledge of the types of *367 policies, their different terms, and the coverage available in the area in which his principal seeks to be protected. If he neglects to procure the insurance or if the policy is void or materially deficient or does not provide the coverage he undertook to supply, because of his failure to exercise the requisite skill or diligence, he becomes liable to his principal for the loss sustained thereby. [Id. at 476 (citations omitted)].
In Bates v. Gambino, 72 N.J. 219, 225 n. 2 (1977), the Supreme Court noted that, "[A] plaintiff can establish a prima facie case of negligence against the broker ... `if he assures the insured that he is covered whereas he is not....' [citations omitted]" In this case Gionti advised plaintiff that her coverage would remain in effect if she paid her premium before the effective date of cancellation. It is undisputed that Gionti was plaintiff's broker and gave her the impression that she would be fully covered upon receipt of the payment by Select Way. Moreover, Gionti took no timely action to make sure that the check he received from plaintiff was actually received by Select Way and that the policy was reinstated. Even if Gionti's belief that the policy would be reinstated was reasonable, he did nothing to make sure that the reinstatement was being processed and that plaintiff was covered. He knew that the cancellation was to be effective on May 11, 1983, but accepted plaintiff's check and mailed it to Select Way on May 10, 1983, just one day before the cancellation took effect. Under those circumstances, the trial judge did not err in concluding that Gionti was negligent as a matter of law in not taking further action to assure coverage for plaintiff after May 11, 1983.

III
Gionti contends that Hartford's failure to give plaintiff notice of cancellation as required by N.J.S.A. 17:29C-8 invalidates the cancellation and requires reversal of the summary judgment entered in Hartford's favor. That statute provides that an automobile insurer must mail or deliver to the insured notice of cancellation for nonpayment of premium along with the reason for such cancellation at least 15 days prior to the effective date of the cancellation.
*368 The Insurance Premium Finance Company Act, N.J.S.A. 17:16D-1 et seq., was adopted in 1968. L. 1968, c. 221. N.J.S.A. 17:16D-13 provides, in part:
(a) When a premium finance agreement contains a power of attorney enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled by the premium finance company unless such cancellation is effectuated in accordance with this section.
(b) Not less than 10 days' written notice shall be mailed to the insured of the intent of the premium finance company to cancel the insurance contract unless the default is cured within such 10-day period. A copy of said notice shall also be sent to the insurance agent or insurance broker indicated on the premium finance agreement.
(c) After expiration of such 10-day period, the premium finance company may thereafter request in the name of the insured, cancellation of such insurance contract or contracts by mailing to the insurer a notice of cancellation and the insurance contract shall be canceled as if such notice of cancellation had been submitted by the insured himself, but without requiring the return of the insurance contract or contracts. The premium finance company shall also mail a notice of cancellation to the insured at his last known address and to the insurance agent or insurance broker indicated on the premium finance agreement. The effective date of such cancellation shall not be earlier than 3 days after the date of mailing of such notice to the insured and to the insurance agent or insurance broker.
Unlike the Premium Finance Company Act just quoted, N.J.S.A. 17:29C-8 relates to a "notice of cancellation" initiated by the insurer. However, the provisions of N.J.S.A. 17:29C-8 have no application where it is the insured, or the premium finance agency acting in his place pursuant to a power of attorney authorized by statute, who requests cancellation of his policy. The power of attorney given to the premium finance company by an insured allows that company to cancel the policy "as if such notice of cancellation had been submitted by the insured himself...." N.J.S.A. 17:16D-13(c). Hence, we conclude that the two statutory schemes are complementary rather than in conflict and must be construed harmoniously. State v. Green, 62 N.J. 547, 554-555 (1973); Superior Air Prod. v. NL Industries, 216 N.J. Super. 46, 63-64 (App.Div. 1987). Because the premium finance agreement signed by plaintiff included a provision giving Select Way the power of attorney to cancel the policy, the provisions of N.J.S.A. 17:16D-13 control. Cf. Kende *369 Leasing Corp. v. A.I. Credit Corp., 217 N.J. Super. 101, 107-114 (App.Div. 1987), (holding that failure of finance company to give proper notice under N.J.S.A. 17:16D-13 rendered subsequent notice of cancellation ineffective); Ryan v. Henderson, ___ N.J. Super. ___ (Law Div. 1987). See also Wright v. Rumble, 194 N.J. Super. 337, 342 (App.Div. 1984).
The notices in this case complied with the statutory requirements of N.J.S.A. 17:16D-13, compare Kende, supra. The requirement of N.J.S.A. 17:29C-8 that the insurer mail its own notice of cancellation to the insured at least 15 days prior to cancellation in order for the cancellation to be effective was not applicable.
We nevertheless conclude that summary judgment was improperly granted in favor of Hartford in the absence of any proof that it acted promptly and reasonably in response to Select Way's request for reinstatement and the provisions of Select Way's notice requesting that Hartford advise the insured immediately of the status of his policy. Cf. Griggs v. Bertram, 88 N.J. 347, 357-362 (1982); Kende Leasing Corp. v. A.I. Credit Corp., 217 N.J. Super. 101, 113-19 (App.Div. 1987); Global American Ins. Managers v. Perera Co., Inc., 137 N.J. Super. 377 (Ch.Div. 1975), aff'd o.b., 144 N.J. Super. 24 (App.Div. 1976). See also Weathers v. Hartford Insurance Group, 153 N.J. Super. 563 (App.Div. 1977), rev'd, 77 N.J. 228 (1978). Given the deposition testimony of Gionti to the effect that reinstatement was expected pursuant to industry standards, as he understood them, and that prior to June 2, 1983 he expected reinstatement in the absence of notice to the contrary, we believe that a factual issue exists as to the timeliness of Hartford's decision and notice not to reinstate. This is particularly true because Hartford had learned, through Select Way, that the payment was received, that reinstatement was requested and, by inference, that plaintiff was not endeavoring to obtain other coverage at the time.
*370 Accordingly plaintiff's judgment against Gionti is affirmed but the summary judgment for Hartford is reversed, and the matter is remanded for further proceedings consistent with this opinion.
NOTES
[1] The judgment refers to plaintiff Louise Auger only, and the relevant opinions of the trial court refer to plaintiff in the singular. We adopt that approach.
[2] Judgment was also entered in favor of defendant The Select Way Budget Plan, Inc. In his letter opinion granting Hartford's motion, the judge found that Gionti was not an agent authorized to collect premiums for Select Way. The judgment in favor of Select Way is not challenged on this appeal. Nor does this appeal concern any related or consolidated action involving the plaintiff's automobile accident which gave rise to this suit.
[3] We hereinafter refer to both Eugene Gionti and defendant Gionti Agency as Gionti.
[4] The agreement also provides that "The agent issuing said policies is not an agent of Select Way and therefore Select/Way will not be bound by any act of the agent."
[5] There is no contest in this case concerning compliance with the statutory notice requirements authorizing cancellation at the request of the financing company. See Kende Leasing Corp. v. A.I. Credit Corp., 217 N.J. Super. 101 (App.Div. 1987).
[6] A representative from Select Way testified that its procedures would have been no different if the payment had been received on May 9 instead of May 12.
[7] The memo indicated that the reinstatement could be reconsidered upon verification that the original cancellation notice was sent in error.