268 N.J. Super. 220 (1993)
633 A.2d 116
JAMES BRIGHT, JR., PETITIONER-RESPONDENT,
v.
T & W SUFFOLK, INC., RESPONDENT-APPELLANT, AND LIBERTY MUTUAL INSURANCE COMPANY, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1993.
Decided November 22, 1993.
*221 Before Judges PRESSLER, BROCHIN and KLEINER, JJ.
Robert J. Re argued the cause for the respondent-appellant (Braff, Harris & Sukoneck, attorneys; Ira Sukoneck, of counsel; Mr. Re, on the brief).
Robert M. Gilbert argued the cause for the respondent-respondent, Liberty Mutual Insurance Company (Robert G. Bressler, of counsel; Mr. Gilbert, on the brief).
Petitioner-respondent, James Bright, Jr., did not file a brief.
The opinion of the court was delivered by KLEINER, J.S.C. (temporarily assigned).
*222 This is a workers' compensation matter involving a dispute between the respondent-employer, T & W Suffolk, Inc., and its workers' compensation insurance carrier, Liberty Mutual Insurance Company, concerning insurance coverage for a work related accident suffered by petitioner James Bright, Jr. on June 2, 1990. After Bright's claim petition was served upon Suffolk, the respondent Liberty Mutual disclaimed coverage. Suffolk thereafter joined Liberty Mutual as a respondent before the Workers' Compensation Court to litigate the issue of insurance coverage. After a plenary trial, the judge of the Workers' Compensation Court determined that the policy of insurance had lapsed by virtue of the nonpayment by Suffolk of the insurance premium which was a condition precedent to the renewal of insurance coverage. Suffolk appeals that decision and we reverse.
Liberty Mutual first issued a policy of workers' compensation insurance to Suffolk for the period March 16, 1988, to March 16, 1989. The policy was issued pursuant to the New Jersey Workers' Compensation Insurance Plan adopted by the insurance company members of the Compensation Rating and Inspection Bureau, and approved by the Commissioner of Insurance for the benefit of employers subject to the New Jersey Workers' Compensation law (Plan).[1] The adoption of this Plan is authorized by N.J.S.A. 17:29C-1. The initial workers' compensation insurance policy was renewed for the period March 16, 1989, to March 16, 1990.
On January 3, 1990, Liberty Mutual forwarded a communication to Suffolk:

*223 RE: Workers' Compensation Renewal Proposal Policy Number WC1-332-427599-010
Your present Workers' Compensation policy will expire on 3/16/90 at 12:01 AM and coverage will terminate as of that date. Assuming that continuous coverage is needed, a renewal policy has been issued, based on the latest available classifications, rates, payrolls, and any applicable experience modification.
Your renewal deposit premium is $4,132. This renewal will only take effect if the renewal deposit premium is received prior to 3/16/90. If we do not receive the renewal deposit premium by the effective date indicated, we must notify the NEW JERSEY AUTHORITIES of the termination of this coverage. Your payment and a copy of this letter should be sent directly to: LIBERTY MUTUAL INSURANCE COMPANY, P.O. BOX 7216, PHILADELPHIA, PA 19101
If this coverage is not needed, please sign and return one copy of this letter to the address below. I do not need this insurance to be renewed.
____________________
Signature Title
[Emphasis added].
On January 5, 1990, and February 21, 1990, separate bills for the renewal premium were mailed by regular mail to Suffolk. The last bill warned, "IF PAYMENT IS NOT RECEIVED BY EFFECTIVE DATE COVERAGE WILL TERMINATE." The effective date was designated as "March 13, 1990."[2]
On March 16, 1990, Liberty Mutual canceled this policy on its books and on March 26, 1990, it mailed a notification of the cancellation to the Compensation Rating Bureau informing the Bureau of the cancellation effective April 10, 1990. Liberty Mutual utilized a standard form for canceling workers' compensation policies mandated by N.J.S.A. 34:15-81 entitled "Cancellation of Contract; Notice."
This standardized notice contains a legend "certification" and Liberty Mutual certified that a like notice of election to terminate the stated contract of insurance had been given the employer as is required by N.J.S.A. 34:15-81. The "reason for cancellation" was completed by Liberty Mutual as "canceled flat on company books."
*224 Liberty Mutual's certification was incorrect as the company failed to comply with N.J.S.A. 34:15-81 which provides:
No such policy shall be deemed to be canceled until:
a. At least ten days' notice in writing of the election to terminate such contract is given by registered mail by the party seeking cancellation thereof to the other party thereto....
Liberty Mutual has admitted that it did not in fact give ten days' written notice of its election to terminate the insurance contract to Suffolk, nor was any communication directed to Suffolk forwarded by registered mail.
In an effort to avoid its responsibility to provide coverage, Liberty Mutual contends that its failure to comply with the statutory prerequisites to policy cancellation is irrelevant as it complied with N.J.S.A. 17:29C-1 governing the renewal of insurance policies.
Our law draws a sharp distinction between the cancellation of an existing policy of insurance, an offer to renew a policy of insurance conditioned upon the payment of an insurance premium, and intent on the part of the insurer not to renew a policy of insurance upon its expiration date. The distinctions have been discussed in Meric Trucking & Leasing Co. v. Philip Lehman Co., Ltd., 247 N.J. Super. 261, 263-65, 588 A.2d 1285 (App.Div. 1991) (addressing workers' compensation insurance), and in our decisions in Lopez v. Ins. Underwriting Ass'n, 239 N.J. Super. 13, 570 A.2d 994 (App. Div.), certif. denied, 122 N.J. 131, 584 A.2d 206 (1990); Cervone v. N.J. Auto Full Ins., 239 N.J. Super. 25, 570 A.2d 999 (App.Div. 1990); Miller v. Reis, 189 N.J. Super. 437, 442-43, 460 A.2d 210 (App.Div. 1983) (addressing automobile liability insurance).
As noted in Lopez v. Ins. Underwriting, supra, 239 N.J. Super. at 19, 570 A.2d 994:
Cancellation is a term ordinarily applicable to the procedure by which a policy already issued and in force is terminated....
On the other hand, procedures concerning renewal offers and nonrenewal notices recognize the fact that insurance policies afford coverage only for a specified period of time and that coverage will cease unless the policy is renewed. In order to prevent "lapses in coverage" resulting from "oversight by the insured" statutory *225 and regulatory provisions exist requiring insurance companies to notify the insured that the policy period is about to end but that coverage will continue if the premium is paid by a certain date (a renewal offer), or that the policy period is about to end and the insured [sic insurer] does not intend to renew the policy (a notice of nonrenewal).
Continuation of coverage is favored in our law. Id. at 20, 570 A.2d 994. Thus, we insist that insurance companies strictly comply with all statutory requirements. Miller v. Reis, supra, 189 N.J. Super. at 444, 460 A.2d 210. "Avoidance by the insurance company of policy obligations is prevented where it is reasonably possible to do so." Ibid. (citing Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 170 A.2d 22 (1961)).
Not only did Liberty Mutual fail to comply with the statutory requirements governing cancellation, N.J.S.A. 34:15-81, its action was inconsistent with the approved procedure respecting workers' compensation policy renewal approved by the Commissioner of Insurance in the New Jersey Workers' Compensation Insurance Plan, and it contravened the expressed policy of the Plan favoring the continuation of insurance coverage.
Paragraph 11 of the New Jersey Workers' Compensation Insurance Plan provides:
It shall be the obligation of the insurance company to arrange to afford renewal insurance for each employer insured by it in accordance with the provisions of this Plan. Approximately thirty days prior to the renewal date, the insurance company shall arrange for the particulars incident to the renewal of the insurance and provided the deposit premium is paid by the employer prior to the renewal date, the renewal insurance shall be issued without lapse.
........
In the event that the deposit premium is not paid prior to the renewal date, the insurance company is authorized to defer the effective date of the renewal insurance until 12:01 A.M. on the day following receipt of payment.
........
If insurance is not effected within sixty days of expiration the insurance company shall notify the Rating Bureau and furnish complete particulars of its efforts to effect insurance. The Rating Bureau shall inform the employer and designated producer, if any, and in the absence of premium payment leading to the issuance of insurance shall relieve the insurance company of any further responsibility.
*226 The first communication to Suffolk on January 3, 1990 indicated the existing policy "will expire on 3/16/90 at 12:01 AM and coverage will terminate as of that date." Yet its notification to the Compensation Rating Bureau dated March 26, 1990, on a form designed as a "cancellation" form, indicated an intent to discontinue the payment of claims effective April 10, 1990. Liberty Mutual is unable to offer a rational explanation to reconcile "nonrenewal" for nonpayment of premium at 12:01 a.m. on March 16, 1990 with its notification to the Rating Bureau of its intent to discontinue the payment of claims effective April 10, 1990. The payment of any claim arising after March 16, 1990 would be totally inconsistent with the nonrenewal of the insurance policy effective March 16, 1990. Liberty Mutual has admitted that if the petitioner Bright had been injured at work after March 16, 1990 and prior to April 10, 1990, his injury would have been an insured event under the policy of insurance it originally issued to Suffolk.
As noted in the Plan, in the case of a nonrenewal of a worker's compensation insurance policy, the insurance carrier is not completely relieved of its responsibility to its insured until after sixty days of the renewal date and only after "full particulars" of efforts to effect insurance are provided the Rating Bureau.[3] In this case, Liberty Mutual provided no particulars of its efforts to effect insurance to the Rating Bureau. Its only communication to the Rating Bureau was its notification that it canceled the policy "flat on its books" as of March 16, 1990 but would stop paying claims as of April 10, 1990. That notification is the antithesis of demonstrating to the Compensation Rating Bureau that it used its "best efforts to effect insurance." Liberty Mutual's action was not only inconsistent with the approved post-nonrenewal procedure authorized in the Plan, it was violative of that procedure.
*227 We conclude that Liberty Mutual attempted to cancel this policy without strict compliance with the requirements of N.J.S.A. 34:15-81. To sanction an improper method of cancellation of a workers' compensation policy would contravene the public policy favoring insurance coverage.
The decision of the Division of Workers' Compensation is reversed. Suffolk shall be afforded coverage, provided the premium for the period of March 16, 1990 to March 16, 1991 is paid within twenty days of the date of this opinion. The insurance coverage shall include the previously adjudicated claim in favor of the petitioner Bright previously entered in the Division of Workers' Compensation.[4]
NOTES
[1] Paragraph one of the Plan provides:

1. This Plan is available to any employer in good faith entitled to insurance under the New Jersey Workers' Compensation Law, who is unable to secure insurance for their liability under that law and who does not have outstanding any uncontested unpaid premium in connection with any Workers' Compensation and Employers Liability Insurance in effect during the two years immediately proceeding.
[2] The effective date "March 13, 1990" is presumed to be a typographical error and it is presumed that the date "March 16, 1990" was intended.
[3] We have not been called upon to determine whether full compliance with the nonrenewal procedure would have rectified the error discussed referable to N.J.S.A. 34:15-81.
[4] At oral argument, we were advised that Bright's claim petition was reduced to a judgment awarding temporary and permanent compensation benefits, medical benefits and attorney's fees against the respondent Suffolk, which judgment is presently unsatisfied.