889 A.2d 452 (2006)
382 N.J. Super. 359
Andrea ONGARO, Petitioner-Respondent,
v.
COUNTRY FLOORING ENTERPRISES, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 30, 2005.
Decided January 17, 2006.
*453 Julie Colin, Princeton, argued the cause for appellant Fireman's Fund Insurance Company (Hill Wallack, attorneys; Ms. Colin, on the brief).
Alan B. Baybick, Cinnaminson, argued the cause for respondent Country Flooring Enterprises.
Peter C. Harvey, Attorney General, attorney for respondent Uninsured Employer's Fund (Michael J. Haas, Assistant Attorney General, of counsel; Alan C. Stephens, Deputy Attorney General, on letter in lieu of brief).
Before Judges WEISSBARD, WINKELSTEIN[1] and SABATINO.
The opinion of the court was delivered by
SABATINO, J.S.C., (temporarily assigned).
This appeal calls for us to consider whether a workers compensation insurer sufficiently complied with N.J.S.A. 34:15-81(b) in the policy cancellation notice that it transmitted to a unit of the Department of Banking and Insurance. The compensation judge ruled that the insurer failed to satisfy the statute because of two clerical errors contained in the typed notice that the insurer mailed to the Department. We reverse, concluding that the clerical errors did not materially impair the insurer's adherence to the statute.
The relevant facts are not complicated. Respondent Country Flooring Enterprises ("Country Flooring") procured workers compensation insurance coverage from appellant Fireman's Fund Insurance Company ("Fireman's Fund") in a policy effective from December 24, 1998 through December 24, 1999. Country Flooring fell behind its payments on that policy. This caused Fireman's Fund to send a cancellation notice by certified mail to Country Flooring on February 19, 1999, reciting a cancellation date of March 6, 1999.
Although Country Flooring did not receive or accept the certified mailing, that does not nullify the cancellation of its coverage. Under the applicable statutory provision, N.J.S.A. 34:15-81,[2] the canceling insurer is not obligated to secure the insured's acknowledgment that it actually received the notice. Rather, subsection (a) of the statute only requires the insurer to send the cancellation notice to the insured at the insured's address listed on the insurance policy. That was indisputably *454 done here. Accord Cardinale v. Mecca, 175 N.J.Super. 8, 11-12, 417 A.2d 551 (App.Div.1980)(certified mail deemed to satisfy the requirement of "registered mail" for cancellation notices under N.J.S.A. 34:15-81(a)).
There is also no dispute that Fireman's Fund afforded Country Flooring the full ten days notice required by N.J.S.A. 34:15-81(a). In fact, the cancellation date specified in the notice, March 6, 1999, was fifteen days after the date of Fireman's Fund's mailing to Country Flooring.
However, the statute prescribes a second step in order to make a policy cancellation effective. Specifically, subsection (b) of N.J.S.A. 34:15-81 also requires the insurer to transmit a "like notice" to the Department of Banking and Insurance, along with a certified statement verifying that the notice to the insured called for by subsection (a) has been issued. See N.J.S.A. 34:15-81(b). As an administrative matter, such companion notices are routed to the Compensation Rating and Inspection Bureau ("CRIB"), a unit within the Department.
Here, Fireman's Fund mailed such a companion notice to CRIB on April 7, 1999, informing the Department that it had canceled Country Flooring's coverage. However, as Fireman's Fund acknowledges, its typewritten notice to CRIB included two errors: (1) it listed the effective date of Country Flooring's one-year policy as "12-24-99" when it should have read "12-24-98"; and (2) it mistakenly stated that the employer's cancellation notice was mailed on "3-25-99" to Country Flooring, rather than the actual mailing date of February 19, 1999.
Based on these two errors in Fireman's Fund's notice to CRIB, the compensation court ruled that Fireman's Fund had failed to provide the Department the "like notice" required by the statute. Accordingly, the compensation court declared the policy cancellation ineffective. That ruling signified that Country Flooring continued to have compensation coverage with Fireman's Fund on May 5, 1999, the date on which its employee, petitioner Andrea Ongaro,[3] sustained a workplace injury.
We address the "like notice" issue on a clean slate. Although the relevant statute, N.J.S.A. 34:15-81, dates back to 1917, no reported case law identifies the elements of the "like notice" called for under subsection (b). Nor have counsel pointed us to any germane legislative history on that narrow issue.
As we understand it, from our reading of the statute as a whole and also from our colloquy with counsel at oral argument, the regulatory purpose of subsection (b) of the statute is to alert the State that an employer within New Jersey has caused its workers compensation coverage to lapse. Because such coverage provides employees in our State with an important safety net for workplace accidents, the Department has good reason to track which employers have active compensation coverage, and which ones do not. Such coverage through an insurance policy, or through a self-insurance fund, is mandatory for most employers in New Jersey. See N.J.S.A. 34:15-71 and -72. We were advised at oral argument that at times the Department conducts inspections of employers to assure that employers maintain such coverage, and that they promptly obtain replacement coverage when their compensation policies are canceled.
The question before us is whether the attempted "like notice" furnished by Fireman's *455 Fund to the Department on April 7, 1999 comported with the statute in a manner sufficient to enable the State to carry out these regulatory objectives. We believe that it did.
We conclude that the two incorrect dates contained in the insurer's notice to CRIB do not amount to a material deviation from the "like notice" requirements of subsection (b). No one has argued to us how those inaccuracies did or could have affected any regulatory action by CRIB or by the Department of Banking and Insurance, or any decisions by third parties who might have checked CRIB's records.
Respondent Country Flooring argues that "like notice" under N.J.S.A. 34:15-81(b) connotes, in essence, "identical notice." In making this argument, respondent urges us to consider dictionary definitions of the adjective "like," definitions which respondent interprets as requiring perfect replication of one thing for another. But we observe that the dictionary meaning of "like" is far broader than the mirror-image connotation advocated by respondent. For example, Webster's II New College Dictionary 635 (1999) primarily defines the adjective "like" as "having the same or almost the same characteristics; similar." (our emphasis). That same dictionary lists, as synonyms for "like," a number of flexible words such as "similar," "analogous," and "comparable." Ibid.
We believe that a sensible reading of "like notice" under N.J.S.A. 34:15-81(b) should not be guided by which dictionary definition one pulls off the shelf, but rather by the functional purposes of the statutory scheme. Clifton v. Zweir, 36 N.J. 309, 323, 177 A.2d 545 (1962)(courts should construe statutes realistically and sensibly, rather than mechanistically); Scaffidi v. Horvitz, 343 N.J.Super. 552, 558, 779 A.2d 439 (App.Div.2001)(codified provisions must be construed "in a sensible manner that furthers the underlying purpose of the statute"). Bearing those functional purposes in mind, we must respectfully part company with the compensation judge's rigid interpretation of subsection (b).
The errors in the April 7, 1999 document appear to be purely clerical in nature. Neither error reasonably could have thwarted the Department from recognizing that Country Flooring had lost its compensation coverage with Fireman's Fund. There was no deception or obfuscation. The remainder of the document accurately contained more than ample information to put the Department on notice of Country Flooring's policy cancellation.
First, we do not see how the misstated effective (not cancellation) date listed for Country Flooring's policy in the CRIB notice made any difference here. A logical reading of the form is that the "December 1999" reference was simply a typographical error for "December 1998." Otherwise, the form submitted to CRIB in April 1999 literally would have been canceling a policy that did not yet even exist.
Second, the CRIB form's mistaken recitation of a later mailing date for the employer's cancellation notice, i.e., March 25 instead of February 19, caused no prejudice. Perhaps we would be concerned if an earlier date had been recited and the insured employer had been deprived of its full ten days under the statute to cure the non-payment of its premium. But that was not the case here.
In sum, because we do not equate "like notice" under N.J.S.A. 34:15-81(b) with "identical notice" or "perfect notice," we hold that the April 7, 1999 notice transmitted to the Department by Fireman's Fund sufficiently complied with the statute. Thus, Country Flooring's policy was lawfully cancelled on April 17, 1999, ten days *456 after the CRIB notice was filed. See N.J.S.A. 34:15-81(c). Because that date preceded petitioner Ongaro's May 5, 1999 workplace injury, the accident was not covered by Fireman's Fund, and recourse may now be pursued from the uninsured employers compensation fund. See N.J.S.A. 34:15-120.1.
Although we certainly do not wish to encourage sloppiness by insurers or by others who file forms with state agencies, we do not believe the minor clerical mistakes specifically presented here warrant the adverse consequences imposed by the compensation court.
Reversed.
NOTES
[1] Judge Winkelstein did not participate in oral argument. With the consent of counsel, he has joined in this opinion.
[2] N.J.S.A. 34:15-81 provides, in pertinent part, as follows:

Any contract of insurance issued by a stock company or mutual association against liability arising under this chapter may be canceled by either the employer or the insurance carrier within the time limited by such contract for its expiration.
No such policy shall be deemed to be canceled until:
a. At least ten days' notice in writing of the election to terminate such contract is given by registered mail by the party seeking cancellation thereof to the other party thereto; and
b. Until like notice shall be filed in the office of the commissioner of banking and insurance, together with a certified statement that the notice provided for by paragraph "a" of this section has been given; and
c. Until ten days has elapsed after the filing required by paragraph "b" of this section has been made ... [.]
[3] Neither Ms. Ongaro, nor the Attorney General as counsel to the Department of Banking and Insurance, took a position before us on this appeal.