902 A.2d 278

MANUELA CARREON, PETITIONER–RESPONDENT, v. HOSPITALITY LINEN SERVICES OF NEW JERSEY, RESPONDENT, AND THE PMA GROUP, RESPONDENT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 15, 2006—Decided July 18, 2006.

Before Judges WEFING, FUENTES and GRAVES.

*James P. Lisovicz* argued the cause for appellant The PMA Group (*Coughlin Duffy,* attorneys; *Mr. Lisovicz* of counsel; *Mr. Lisovicz and Jorge L. Amieva,* on the brief).

*Mark Caira* argued the cause for petitioner-respondent Manuela Carreon (*Brown & Connery* attorneys; *Mr. Caira,* of counsel and on the brief).

The opinion of the court was delivered by

FUENTES, J.A.D.

By leave granted, the Pennsylvania Manufacturers Association Insurance Group ("PMA") appeals from the order of the Workers' Compensation Court, denying its motion to dismiss a claim asserted by plaintiff Manuela Carreon, seeking coverage under a workers' compensation insurance policy issued by PMA. The court of compensation found that the policy issued by PMA to plaintiff's employer, Hospitality Linen Services of New Jersey, LLC ("Hospitality"), was in effect on February 9, 2002, the date of the accident, because PMA had failed to send Hospitality a notice of cancellation. The court of compensation reached this conclusion despite the fact that the request to cancel the policy was made by First Insurance Funding Corp., ("First"), acting as Hospitality's attorney-in-fact.

This appeal requires us to determine the interplay between the procedures for canceling a workers' compensation insurance policy, *N.J.S.A.* 17:16D–13, provided in the Insurance Premium Finance Company Act, *N.J.S.A.* 17:16D–1 to –16, and the notice of cancellation requirements in the Workers' Compensation Act, *N.J.S.A.* 34:15–81. This is the question before us: Is a carrier required under *N.J.S.A.* 34:15–81a to notify its insured of the cancellation of the policy, when such cancellation was triggered by the request of the insured's premium finance company, acting as the insured's attorney-in-fact, and following the procedures out-

lined in *N.J.S.A.* 17:16D–13? We now answer this question in the negative.

We hold that when a carrier receives a request to cancel a workers' compensation policy from the insured's premium finance company, acting as the insured's attorney-in-fact pursuant to a premium finance agreement, the carrier is not required to send the insured the notice of cancellation provided in *N.J.S.A.* 34:15–81a. Under these circumstances, the premium finance company has legally "stepped into the shoes" of the insured, thereby transforming the request to cancel as if originating from the insured himself. *N.J.S.A.* 17:16D–13(c).

We will address and analyze this issue in the following factual context.

I

On or about April 24, 2001, Hospitality entered into a premium financing agreement with First to finance the $28,057 premium for the workers' compensation policy it obtained from PMA. Commencing May 11, 2001, Hospitality was required to make monthly installment payments of $3,240. Under the financing agreement Hospitality gave First a power of attorney to cancel the policy in the event it failed to make the monthly payments or was otherwise in default. The power of attorney provision in the contract reads:

RIGHT TO CANCEL If the Insured does not make a payment when it is due, or if Insured is otherwise in default under this agreement, FIRST may cancel the policies and act in Insured's place with regard to the policies, including endorsing any check or draft issued in the Insured's name for funds assigned to FIRST as security herein. This right given by Insured to FIRST constitutes a "Power of Attorney". Before FIRST cancels the policies, FIRST will provide notice to the Insured, as required by law. Insured agrees that this right to cancel which Insured has granted to FIRST cannot be revoked, and that FIRST's right to cancel will terminate only after all of Insured's indebtedness under this agreement is paid in full.

Hospitality made its monthly payments for May, June, July, August, and September of 2001. It did not make the October payment. First issued a notice of cancellation to Hospitality for non-payment on October 21, 2001. The notice indicated that

unless payment was received, the policy would be cancelled effective October 31, 2001. On October 25, 2001, Hospitality's insurance broker also sent a notice advising it that the policy was scheduled for cancellation on October 31, 2001.

On November 2, 2001, First sent a "notice of cancellation of insurance coverage" to PMA, Hospitality, and to Hospitality's insurance broker. The notice to PMA was sent via certified mail, return receipt requested. PMA received it on November 9, 2001. The document prominently displayed "Notice of Cancellation of Insurance Coverage" in bold large type. It provided, in pertinent part:

> The insurance policy identified in this notice (the "Policy") is hereby cancelled in accordance with the appropriate premium finance statute and/or the insured's premium finance agreement (the "Agreement".) The Agreement, which was signed by or on behalf of the Insured, granted to First Insurance Funding Corp. ("FIRST") a power of attorney to issue this notice and assigned to FIRST the gross unearned premium on the Policy.

In a letter dated November 20, 2001, PMA wrote to Hospitality confirming receipt of First's request to cancel the policy. This letter also clearly stated that, pursuant to First's request, PMA had cancelled the policy effective November 2, 2001. The PMA letter also advised Hospitality that "[a]ny return [of] premiums resulting from the cancellation will be forwarded to the above named [First] finance company. If you have not already done so, *arrangements should be made immediately to place your insurance elsewhere.*" (Emphasis added.)

Hospitality did not heed PMA's advice, and continued to operate its business without procuring workers' compensation coverage from another company. On February 9, 2002, more than two months after Hospitality had received PMA's cancellation of insurance notice, plaintiff was seriously injured in a work-related accident. In the course of using Hospitality's commercial laundry equipment, plaintiff injured the lower part of her right arm, resulting in the amputation of her arm from below the elbow.

## II

Against these facts, the court of compensation ruled that the PMA policy remained in effect on the day of plaintiff's accident, because PMA had not complied with the notice requirement in *N.J.S.A.* 34:15–81. This statute is part of the Workers' Compensation Act. It specifically delineates the procedures to be followed by a party wishing to cancel a workers' compensation policy.

Any contract of insurance issued by a stock company or mutual association against liability arising under this chapter may be canceled by either the employer or the insurance carrier within the time limited by such contract for its expiration.

No such policy shall be deemed to be canceled until:

a. *At least ten days' notice in writing of the election to terminate such contract is given by registered mail by the party seeking cancellation thereof to the other party thereto;* and

b. Until like notice shall be filed in the office of the commissioner of banking and insurance, together with a certified statement that the notice provided for by paragraph "a" of this section has been given; and

c. Until ten days have elapsed after the filing required by paragraph "b" of this section has been made.

The provisions "b" and "c" of this section shall not apply where the employer has replaced the contract to be canceled by other insurance, and notice of such replacement has been filed with the Commissioner of Banking and Insurance. In such event the notice required by provision "a" may, if given by the insurance carrier, recite as the termination date the effective date of the other insurance, and the contract shall be terminated retroactively as of that date. No notice of cancellation of any such contract need be filed in the office of the Commissioner of Banking and Insurance where the employer is not required by any law of this State to effect such insurance.

[*N.J.S.A.* 34:15–81 (emphasis added).]

PMA argues that the request to cancel the policy came, in essence, from the insured, since First was the insured's contractually designated and statutorily recognized attorney-in-fact. Under these circumstances, PMA argues that the court of compensation erroneously determined that it remained legally responsible to notify Hospitality of the cancellation of the policy, because the request to cancel issued by the premium finance company must be legally treated as coming from the insured himself. We agree.

It is not disputed that First complied with the notice requirements applicable to premium finance companies. *N.J.S.A.* 17:16D–13 provides the applicable procedural requirements:

(a) When a premium finance agreement contains a power of attorney enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled by the premium finance company unless such cancellation is effectuated in accordance with this section.

(b) Not less than 10 days' written notice shall be mailed to the insured of the intent of the premium finance company to cancel the insurance contract unless the default is cured within such 10–day period. A copy of said notice shall also be sent to the insurance agent or insurance broker indicated on the premium finance agreement.

(c) *After expiration of such 10–day period, the premium finance company may thereafter request in the name of the insured, cancellation of such insurance contract or contracts by mailing to the insurer a notice of cancellation, and the insurance contract shall be canceled as if such notice of cancellation had been submitted by the insured himself,* but without requiring the return of the insurance contract or contracts. The premium finance company shall also mail a notice of cancellation to the insured at his last known address and to the insurance agent or insurance broker indicated on the premium finance agreement. The effective date of such cancellation shall not be earlier than 3 days after the date of mailing of such notice to the insured and to the insurance agent or insurance broker.

(d) *All statutory, regulatory, and contractual restrictions providing that the insurance contract may not be canceled unless notice is given to a governmental agency, mortgagee, or other third party shall apply where cancellation is effected under the provisions of this section.* The insurer shall give the prescribed notice in behalf of itself or the insured to any governmental agency, mortgagee, or other third party on or before the second business day after the day it receives the notice of cancellation from the premium finance company and shall determine the effective date of cancellation taking into consideration the number of days notice required to complete the cancellation.

[Emphasis added.]

Applying these criteria to the facts developed here, we are satisfied that the PMA policy was duly canceled on December 9, 2001, exactly two months before plaintiff's accident. The following sequence of events illustrates the point.

1) On October 21, 2001, First sent Hospitality a notice of intent to cancel the policy of insurance for non-payment of the monthly installment payments. The notice indicated that unless payment was received within ten days, the policy would be cancelled effective October 31, 2001. *N.J.S.A.* 17:16D–13(b)

2) First sent the same notice to Hospitality's insurance broker. *N.J.S.A.* 17:16D–13(b).

3) On November 2, 2001, First sent a "notice of cancellation of insurance coverage" to PMA, Hospitality, and to Hospitality's insurance broker via certified mail, return receipt requested. *N.J.S.A.* 17:16D–13(c).

4) In a letter dated November 20, 2001, PMA notified Hospitality that the policy had been cancelled effective November 2, 2001, as per First's request. *N.J.S.A.* 17:16D–13(c).

5) On November 29, 2001, the New Jersey Department of Banking and Insurance received and filed an official Notice of Cancellation by Carrier. *N.J.S.A.* 17:16D–13(d), incorporating by reference the requirements of *N.J.S.A.* 34:15–81(c).

As this timeline demonstrates, First complied with all of the statutory requirements applicable to premium finance companies when it sought to cancel the policy due to Hospitality's failure to make the installment payments. The last event in the chain, the filing of the official Notice of Cancellation with the Department of Banking and Insurance, triggers the final time restriction in *N.J.S.A.* 34:15–81(c), which is incorporated by reference in *N.J.S.A.* 17:16D–13(d). That is, the cancellation is not effective "until ten days have elapsed" from the filing of the notice with this governmental agency. Here, the Department of Banking and Insurance filed the notice on November 29, 2001. The policy was therefore cancelled on December 9, 2001.

The agency relationship between First and Hospitality was clearly created by contract, and explicitly sanctioned by the Legislature. This conclusion is supported by our holding in *Auger v. Gionti Agency*, 218 *N.J.Super.* 360, 368–69, 527 *A.*2d 928 (App. Div.), *certif. granted*, 109 *N.J.* 504, 537 *A.*2d 1293 (1987), *appeal dismissed*, 113 *N.J.* 348, 550 *A.*2d 459 (1988) where an insurance agent, who was found negligent for not taking appropriate action to assure coverage for plaintiff, appealed the trial court's grant of summary judgment in favor of the automobile insurance carrier. The trial court held in pertinent part that the policy had been cancelled by the carrier at the request of the premium financing company, in conformity with *N.J.S.A.* 17:16D–13. *Id.* at 362, 550 *A.*2d 459.

The defendant insurance agent in *Auger* argued that the carrier's failure to give plaintiff notice of cancellation as required by

N.J.S.A. 17:29C–8 [1] invalidated the purported cancellation. *Id.* at 367, 527 *A.*2d 928. We rejected this argument.

> [T]he provisions of *N.J.S.A.* 17:29C–8 have no application where it is the insured, or the premium finance agency acting in his place pursuant to a power of attorney authorized by statute, who requests cancellation of his policy. The power of attorney given to the premium finance company by an insured allows that company to cancel the policy "as if such notice of cancellation had been submitted by the insured himself...." *N.J.S.A.* 17:16D–13(c). Hence, we conclude that the two statutory schemes are complementary rather than in conflict and must be construed harmoniously. Because the premium finance agreement signed by plaintiff included a provision giving [the premium finance company] the power of attorney to cancel the policy, the provisions of *N.J.S.A.* 17:16D–13 control.
>
> [*Auger, supra,* 218 *N.J.Super.* at 368, 527 *A.*2d 928 (citations omitted).]

We reach the same conclusion with respect to the two statutes under review here. Because Hospitality expressly gave First a power of attorney to act on its behalf in canceling the policy, the provisions of *N.J.S.A.* 17:16D–13 control. The provisions in *N.J.S.A.* 34:15–81 remain applicable, to the extent they are incorporated by reference through *N.J.S.A.* 17:16D–13(d).

Reversed.

---

[1] *N.J.S.A.* 17:29C–8 provides:

> No notice of cancellation of a policy to which section 2 applies shall be effective unless mailed or delivered by the insurer to the named insured at least 20 days prior to the effective date of cancellation; provided, however, that where cancellation is for nonpayment of premium at least 15 days' notice of cancellation accompanied by the reason therefore shall be given. Unless the reason accompanies or is included in the notice of cancellation, the notice of cancellation shall state or be accompanied by a statement that upon written request of the named insured, mailed or delivered to the insurer not less than 15 days prior to the effective date of cancellation, the insurer will specify the reason for such cancellation.