933 A.2d 931 (2007)
396 N.J. Super. 248
Walter SROCZYNSKI, Petitioner-Respondent,
v.
John MILEK, t/a John Milek Construction, Respondent-Respondent, and
New Jersey Manufacturers Insurance Company, Respondent-Appellant, and
Uninsured Employers Fund, Respondent-Respondent, and
Robert Wood Johnson University Hospital, Intervenor-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 2007.
Decided July 2, 2007.
*932 Richard J. Williams, Jr. argued the cause for appellant New Jersey Manufacturers Insurance Company (McElroy, Deutsch, Mulvaney & Carpenter, attorneys; Michael J. Marone and Mr. Williams, Morristown, of counsel and on the brief.).
David Hoffman, New Brunswick, argued the cause for respondent Walter Sroczynski (Wysoker, Glassner, Weingartner, Gonzalez and Lockspeiser, attorneys; Mr. Hoffman, on the brief.).
William L. Boyan argued the cause for respondent Uninsured Employers Fund.
Donna Marie Montano argued the cause for intervenor-respondent Robert Wood Johnson University Hospital (Celentano, Stadtmauer & Walentowicz, attorneys; Steven Stadtmauer, on the brief.).
John Milek t/a John Milek Construction did not file a brief.
Before Judges WINKELSTEIN, FUENTES and BAXTER.
The opinion of the court was delivered by
BAXTER, J.A.D.
By leave granted, New Jersey Manufacturers Insurance Company (NJM) appeals from the December 7, 2006 order by a judge of compensation denying its motion to be dismissed as the workers' compensation carrier for John Milek Construction (Milek). The order specified that because NJM had not fully complied with the provisions of N.J.S.A. 34:15-81 when it provided notice to Milek of the cancellation of its workers' compensation insurance policy due to non-payment of the premium, the attempted cancellation was ineffective. We reject NJM's arguments that its cancellation procedures substantially complied with N.J.S.A. 34:15-81 and that the judge of compensation erred when she concluded that NJM's cancellation of Milek's policy was ineffective, and affirm.

I.
Petitioner Walter Sroczynski sustained a work-related injury on February 28, 2004, while employed by Milek. Shortly thereafter, on March 17, 2004, he filed a claim petition with the Division of Workers' Compensation. Previously, NJM had issued a standard Workers' Compensation and Employer's Liability Insurance policy to Milek with a policy period of May 5, 2003 to May 6, 2004. Although Milek paid an initial partial premium to NJM, it failed to continue making periodic payments. *933 Consequently, NJM issued a notice of cancellation to Milek via certified mail on August 14, 2003, more than five months prior to Sroczynski's injury.
As required by the provisions of N.J.S.A. 34:15-81, NJM also filed "like notice" of that cancellation with the Commissioner of Banking and Insurance (Commissioner) by using an electronic file transfer protocol (FTP) established by the Compensation Rating and Inspection Bureau (CRIB). The "like notice" that was transmitted electronically by NJM on August 15, 2003, notified CRIB that the cancellation of Milek's policy was intended to be effective as of September 5, 2003.
After receiving notice from the Division of Workers' Compensation that Sroczynski sought coverage for his February 28, 2004 injury, NJM filed a motion to be relieved of any responsibility for providing coverage, arguing that it had canceled Milek's policy effective September 5, 2003, long before Sroczynski was injured.
NJM's motion was opposed by Sroczynski and by the Uninsured Employers Fund (UEF), the entity which would be responsible for paying workers' compensation benefits to Sroczynski were NJM's motion to be granted. The judge of compensation also permitted Robert Wood Johnson University Hospital (hospital) to intervene in light of the considerable medical bills that resulted from medical care it rendered to Sroczynski after his injury.
The judge of compensation set the matter down for a plenary hearing. The only witness who testified was Robert Murray, an assistant vice-president of NJM. Murray testified that NJM sent a notice of cancellation of the policy to Milek Construction, with an effective cancellation date of September 5, 2003, by certified mail, as required by N.J.S.A. 34:15-81(a). He further explained that NJM had complied with N.J.S.A. 34:15-81(b), which requires an insurer to provide "like notice" to the Commissioner whenever it has sent a notice of cancellation to an insured. In his testimony describing NJM's procedure for serving the "like notice" on the Commissioner, Murray explained that initially NJM enters into its own computer system data including the employer's name, the policy number, the "reason code" for cancellation, the date of actual cancellation and the effective date of such cancellation.
Murray further explained that this information is then electronically transferred through NJM's computer system to CRIB. That was the procedure NJM used on August 15, 2003, when it sent "like notice" to CRIB of NJM's cancellation of the policy issued to Milek. Murray testified that this type of notice of cancellation via transfer through the FTP was expressly authorized by the New Jersey Workers' and Employer's Liability Insurance Compensation Manual (Manual). He explained that although this transfer to CRIB through the FTP satisfies the portion of N.J.S.A. 34:15-81(b) that requires the insurer to provide "like notice" to the Commissioner, the FTP does not provide the insurer the opportunity to submit the "certified statement" to the Commissioner, as also required by subsection (b) of the statute. The purpose of the "certified statement" is to certify that notice of cancellation has been sent to the employer. Ongaro v. Country Flooring Enterprs., 382 N.J.Super. 359, 363, 889 A.2d 452 (App.Div.), certif. denied, 186 N.J. 604, 897 A.2d 1059 (2006).
Murray testified that NJM had used the FTP without any problems for "probably ten years." He explained that the FTP sufficiently notifies the Commissioner of the cancellation of an employer's policy and provides the Commissioner with the date the "like notice" was sent to the employer. Murray acknowledged that a *934 "certified statement" of the mailing of such notice is not part of the FTP, and that, to his knowledge, NJM has never sent the certified statement separately to CRIB. He did note, however, that CRIB has never rejected a cancellation because of NJM's failure to file the certified statement.
As NJM correctly argues, there is no dispute between the parties that NJM properly notified the employer, Milek, that it was canceling its workers' compensation policy, or that such notice was sent by certified mail in accordance with the provisions of N.J.S.A. 34:15-18(a). There is also no dispute that the Commissioner was notified of the cancellation, pursuant to N.J.S.A. 34:15-18(b), or that NJM failed to submit the "certified statement," in accordance with that same subsection. Finally, there is no dispute that ten days elapsed from the time notice was served on the Commissioner before the policy was cancelled, as required by N.J.S.A. 34:15-18(c). Thus, the only dispute between the parties is the legal effect of NJM's failure to file the certified statement with the Commissioner.
After the testimony was completed, Judge of Compensation Dietrich issued an oral opinion concluding that:
[T]he carrier failed to properly cancel the policy . . . in that New Jersey Casualty[1] failed to file a certified statement with [CRIB] when it transmitted data to notify CRIB about the policy and cancellation. . . . Mr. Murray acknowledged that the carrier did not and does not file certified statements with CRIB when they transmit cancellation information to CRIB.
[The CRIB instruction page] outlines the manner in which the notice is to be filed and in no way relieves the carrier from its obligation to certify the information . . . [T]he [precedents] require[ ] strict compliance with the cancellation statute. There is public policy favoring . . . workers' compensation insurance, and failure to require strict compliance with cancellation policy will allow a carrier to avoid these responsibilities and deny the insured worker the recovery promised to him by the law. . . .
[T]he CRIB acknowledgment is not sufficient to lift the mandate for certification as stated in the statute. I find that because of the failure of [NJM] to file a correct certification . . . or any certification when canceling the policy of John Milek Construction Company, that the policy is not properly or effectively canceled absent the correct procedure.
Accordingly, the judge of compensation found that coverage under the policy was still in force.

II.
On appeal, NJM makes two arguments: (1) because its cancellation of Milek's policy provided actual notice of such cancellation both to the insured and to the Commissioner, such cancellation satisfied the regulatory purpose of the statute, and should be considered effective, despite NJM's non-compliance with the "certified statement" requirement of N.J.S.A. 34:15-81(b), and (2) that insofar as NJM's notice is deemed deficient, this court should apply the doctrine of substantial compliance and conclude that NJM's notice to CRIB was sufficient.
We review NJM's contentions in light of our standard of review. On appeal, this court must give deference to "the *935 factual findings and legal determinations made by the Judge of Compensation unless they are `manifestly unsupported by or inconsistent with competent relevant and reasonably credible evidence as to offend the interests of justice.'" Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 262, 814 A.2d 1069 (2003) (quoting Perez v. Monmouth Cable Vision, 278 N.J.Super. 275, 282, 650 A.2d 1025 (App. Div.1994), certif. denied, 140 N.J. 277, 658 A.2d 301 (1995)). However, this court has been clear that no deference is owed "where the judge has applied the wrong legal principles in coming to that conclusion." Perez v. Capitol Ornamental, 288 N.J.Super. 359, 368, 672 A.2d 719 (App. Div.1996).
The Legislature established clear procedures that must be followed in order for an insurer to effectuate proper cancellation of an employer's workers' compensation policy. The statute, in pertinent part, provides:
Any contract of insurance . . . arising under this chapter may be canceled by either the employer or the insurance carrier within the time limited by such contract for its expiration.
No such policy shall be deemed to be canceled until:
a. At least ten days' notice in writing of the election to terminate such contract is given by registered mail by the party seeking cancellation thereof to the other party thereto; and
b. Until like notice shall be filed in the office of the commissioner of banking and insurance, together with a certified statement that the notice provided for by paragraph "a" of this section has been given; and
c. Until ten days have elapsed after the filing required by paragraph "b" of this section has been made.
[N.J.S.A. 34:15-81 (emphasis added).]
As previously stated, it is undisputed that NJM complied with all subsections of this statute, other than the portion of subsection (b) requiring it to provide a "certified statement" to the Commissioner, along with its "like notice" of cancellation. The requirements of "like notice" and a "certified statement" in subsection (b) are intended to "alert the [Commissioner] that an employer within New Jersey has caused its workers compensation coverage to lapse." Ongaro, supra, 382 N.J.Super. at 363, 889 A.2d 452.
Although there is no dispute that Milek was in fact provided with notice of the cancellation by NJM, we agree with Sroczynski, the UEF, and the hospital that providing Milek with such notice of cancellation does not relieve NJM of its responsibility to comply with the "certified statement" requirement of N.J.S.A. 34:15-81(b). We reject NJM's argument that because it complied with the file transfer protocol set forth in the manual and approved by the Commissioner, it sufficiently complied with the statute. NJM's argument ignores one of the key provisions of the manual. In particular, the manual requires compliance with all sections of the workers' compensation statutes. In a section entitled "Statutes Read In," the manual provides:
"Statutes Read In." The applicable provisions of R.S.N.J. 34:15-1 through -120 (Revised Statutes, New Jersey Title 34, Chapter 15,-Sections 1 through 102) and all laws amendatory thereof or supplementary thereto, which are or may become effective, are hereby made a part of this Manual.
[Manual, Part 1, Section 1, paragraph 5, effective January 1, 1990.]
Thus, the manual must be interpreted to include the requirement that an insurer such as NJM must comply with all *936 requirements of the statute, N.J.S.A. 34:15-81, including the "certified statement" requirement. Because NJM did not do so, we reject its argument that it completely complied with the manual.
NJM urges us to conclude that the decision by the judge of compensation represents a hyper-technical approach to statutory construction and that its failure to provide the "certified statement" represents an inconsequential deviation from the statutory requirements. We disagree. Accepting NJM's argument would require us to ignore a portion of the statutory scheme that the Legislature believed was important, and would in effect constitute a rewriting of the statute by this court. That, we are not prepared to do. Our own precedents and those of the Supreme Court warn against such a cavalier approach by an insurer to the requirements of the workers' compensation statutes. Romanny v. Stanley Baldino Constr. Co., 142 N.J. 576, 584, 667 A.2d 349 (1995); Bright v. T & W Suffolk, Inc., 268 N.J.Super. 220, 225, 633 A.2d 116 (App.Div.1993).
In Bright, a carrier attempted to terminate a workers' compensation insurance policy but had done so by regular mail, in contravention of the certified mail requirement of N.J.S.A. 34:15-81(a). 268 N.J.Super. at 227, 633 A.2d 116. Here, as in Bright, the employer concedes that it did, in fact, receive notice of the cancellation. In Bright, we held that notice of the cancellation was ineffective unless all portions of the statute were satisfied, and we wrote, "[w]e conclude that [the carrier] attempted to cancel this policy without strict compliance with the requirements of N.J.S.A. 34:15-81. To sanction an improper method of cancellation of a workers' compensation policy would contravene the public policy favoring insurance coverage." Ibid.
The Supreme Court, a year later, also recognized "the strong public policy favoring uninterrupted workers' compensation coverage for all employers as well as the principle that insurance companies must comply strictly with all statutory . . . requirements relating to cancellation or non-renewal of such policies." Romanny, supra, 142 N.J. at 584, 667 A.2d 349.
NJM urges us to instead rely upon our decision in Ongaro, supra, 382 N.J.Super. at 363-64, 889 A.2d 452, where we held that an insurer's cancellation of a workers' compensation policy was valid despite errors in the notice of cancellation. NJM's reliance on our decision in Ongaro is misplaced. As Sroczynski, the UEF and the hospital correctly argue, the errors made by the carrier there were clerical in nature, and did not, unlike here, constitute a deliberate refusal to comply with the requirements of the statute.
In Ongaro, when the carrier submitted its "like notice" to the Commissioner as required by N.J.S.A. 34:15-81(a), it made two errors in the "effective dates" of the policy and of the cancellation date. Id. at 362-63, 889 A.2d 452. We held that such errors were not fatal to the cancellation of the policy because the errors in the notice were "purely clerical in nature" and could not have "thwarted" the Commissioner's ability to recognize that the insured had lost its insurance coverage. Id. at 365, 889 A.2d 452. We therefore concluded that the regulatory objectives of the statute had been met despite those errors, and held the cancellation to be effective. Ibid.
NJM's reliance on our decision in Carreon v. Hospitality Linen Servs., 386 N.J.Super. 504, 902 A.2d 278 (App.Div. 2006) is equally unavailing. There, we held that where the notice of cancellation was sent to the insured's premium finance company in compliance with the provisions of an unrelated statute, N.J.S.A. 17:16D-13, rather than to the insured directly, such cancellation was nonetheless valid. *937 Id. at 511, 902 A.2d 278. Carreon, unlike this case, involved the interplay between two conflicting statutes, and has no bearing on the arguments NJM advances here.

III.
Similarly, we are not persuaded by NJM's argument that its cancellation of Milek's policy should be accepted because it substantially complied with the statutory requirements. The Supreme Court has held that the underlying purpose of the substantial compliance doctrine "is to avoid the harsh consequences that flow from technically inadequate actions that nonetheless meet a statute's underlying purpose." Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 352, 771 A.2d 1141 (2001). "It is a doctrine based on justice and fairness, designed to avoid technical rejection of legitimate claims." Ibid.
Evaluation of NJM's substantial compliance argument requires us to examine five factors:
(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not a strict compliance with the statute.
[Bernstein v. Bd. of Trs., 151 N.J.Super. 71, 76-77, 376 A.2d 563 (App.Div.1977).]
Although elements two, three and four of the Bernstein test are satisfied, elements one and five clearly were not. As to element one, Sroczynski and particularly the hospital, correctly argue that NJM fails to account for the fact that if its cancellation were deemed effective, Sroczynski would be prejudiced because he would be unable to recover permanent disability benefits for his injuries from the UEF. See N.J.S.A. 34:15-120.2 (providing recovery only for medical expenses and temporary disability benefits). Although Sroczynski may be able to obtain a civil judgment against Milek, under N.J.S.A. 34:15-120.9, this fact does not guarantee Sroczynski the permanent disability benefits that would have been provided through the NJM policy.
Equally as important, the fifth element of the test in Bernstein, which required NJM to provide "a reasonable explanation why there was not a strict compliance with the statute," is clearly not met here. 151 N.J.Super. at 77, 376 A.2d 563. As NJM's Robert Murray testified, it was the practice of NJM to never send out the certified statement, but only to use the FTP to effectuate cancellation of policies. NJM urges us to conclude that because the CRIB electronic filing system could not accept a certified statement, which is a hand-signed document, that it should be relieved of that requirement. Certainly, nothing prevented NJM from submitting the certified statement by mail in addition to the electronic transmission of "like notice" under the FTP. Such failure to comply with the statute cannot amount to a "reasonable explanation" as to why strict compliance was not achieved. As a result, the fifth element of the substantial compliance test is not satisfied. We accordingly, reject NJM's substantial compliance argument.
Affirmed.
NOTES
[1] NJM was referred to as New Jersey Casualty in the proceedings before the judge of compensation.