14 A.3d 65 (2011)
418 N.J. Super. 441
AMB PROPERTY, LP, Plaintiff-Appellant/Cross-Respondent, and
Federal Insurance Company, Plaintiff,
v.
PENN AMERICA INSURANCE COMPANY,[1] and Jimcor Agency, Inc., Defendants-Respondents/Cross-Appellants, and
Matrix Realty, Inc., Mystic Express, Inc., and Suburban General Insurance Agency, Defendants.
No. A-1248-09T2.
Superior Court of New Jersey, Appellate Division.
Argued January 11, 2011.
Decided February 14, 2011.
*66 Patrick A. Robinson, Bridgewater, argued the cause for appellant/cross-respondent (Robinson Burns, LLC, attorneys; Mr. Robinson and Erin A. Bedell, on the brief).
Glenn D. Curving argued the cause for respondent/cross-appellant Penn America Insurance Company (Riker Danzig Scherer Hyland & Perretti LLP, attorneys; Mr. *67 Curving, of counsel; Mr. Curving and Peter M. Perkowski Jr., Morristown, on the brief).
Joseph L. Turchi argued the cause for respondent/cross-appellant Jimcor Agency, Inc. (Salmon, Ricchezza, Singer & Turchi LLP, attorneys; Mr. Turchi and Jared T. Hay, of counsel; Mr. Turchi, Mr. Hay and Kellie A. Allen, on the brief).
Before Judges PARRILLO, YANNOTTI and ESPINOSA.
The opinion of the court was delivered by
PARRILLO, P.J.A.D.
Plaintiff, AMB Property, LP (plaintiff), appeals a summary judgment dismissal of its action seeking: (1) a declaration, as an additional insured, that defendant Penn America Insurance Company (Penn America) owes plaintiff a defense and indemnification for an underlying claim; and (2) damages against defendant Jimcor Agency, Inc. (Jimcor), the managing general agent for Penn America, for professional negligence. Defendants cross-appeal, arguing that even if the policy was improperly canceled, plaintiff would not have been covered as an additional insured. We affirm the summary judgment dismissal, and therefore need not reach the issues raised on the cross-appeal.
The essential facts are not in dispute. Plaintiff owns property, including a warehouse, where Mystic Express, Inc. (Mystic) was a tenant. Under the lease and licensing agreements between Mystic and plaintiff, Mystic was required to obtain a liability insurance policy, with plaintiff and plaintiff's property manager, Matrix Realty, Inc. (Matrix Realty) as additional insureds. The lease also required plaintiff to obtain insurance and, as landlord, to maintain and repair, among other things, the roof of the warehouse.
Mystic obtained insurance from Penn America using Suburban General Insurance Agency (Suburban), its retail insurance broker, who procured a general liability policy through Jimcor, the wholesale insurance producer acting as Penn America's managing general agent. The initial policy term was from October 2, 2003 to October 2, 2004. On October 2, 2004, Mystic renewed the policy through Suburban. The renewal policy (the policy) had a term of October 2, 2004 through October 2, 2005. The policy contained an "additional insured" endorsement, naming plaintiff and Matrix Realty.
Mystic funded the premium through a premium financing agreement with AICCO, Inc. (Imperial), which paid the annual policy premium in full, and then billed Mystic in installments. The agreement included the following under "Representations & Warranties of Broker or Agent":
The Agent or Broker will hold in trust for LENDER any payments made or credited to the Insured through the Agent or Broker directly, indirectly, actually or constructively, by any of the insurance companies listed in the Schedule of Policies and will pay the monies to LENDER upon demand to satisfy the then outstanding balance hereunder.
. . . .
There is nothing in any Policy that would require Lender to notify or get the consent of any third party to effect cancellation of such Policy.
The agreement also contained a power of attorney provision, permitting Imperial to act as Mystic's attorney-in-fact to cancel the policy in the event of nonpayment:
THE UNDERSIGNED INSURED:
. . . .
2.a. Irrevocably appoints LENDER Attorney-in-Fact with full authority, in the event of default, to (i) cancel the *68 said policies in accordance with the provisions herein, (ii) receive all sums assigned to LENDER and (iii) execute and deliver on behalf of the undersigned all documents, forms and notices relating to the insurance policies listed on the SCHEDULE OF FINANCED POLICIES in furtherance of this Agreement. . . .
Mystic did not sign the premium finance agreement; instead, it was signed by its broker, Suburban, on behalf of Mystic. Ibid.
On October 7, 2004, Imperial sent Mystic a notice of acceptance, which detailed the premiums, down payment, amount financed, finance charge, and the rate of interest. It also showed the monthly payment amount. The notice of acceptance provided that:
Your agent or broker has warranted that either (1) you have signed the premium finance agreement, or (2) you have authorized him/her to sign on your behalf. If your Premium Finance Agreement was signed by your Insurance Agent or Broker, such Agent or Broker warrants that he is authorized to act as agent for you in the signing of the Premium Finance Agreement and has forwarded your down payment check for credit to your account. You may rescind the terms of the Premium Finance Agreement and this Notice of Acceptance by mailing to Lender at the address shown on the reverse side, notice of such rescission within 10 days of the date of mailing of this notice. If no such notice of rescission is so received, the terms of the Premium Finance Agreement and this Notice of Acceptance shall be binding upon all parties.
The security for this financing is the unearned premiums on the policies financed. The finance charge begins to accrue as of the earliest policy effective date. Do not confuse this premium finance loan with the type of credit that revolves from month to month and permits late payments with a penalty. IF YOU DO NOT PAY YOUR PREMIUM FINANCE INSTALLMENTS ON OR BEFORE THE DUE DATES, YOU MAY RISK LOSING YOUR INSURANCE PROTECTION.
The notice referred to the power of attorney provision in the premium finance agreement:
Your premium finance agreement contains a power of attorney authorizing Lender to cancel the indicated policies under certain conditions, including nonpayment. This finance agreement is secured by the unearned premium on your policies, and Lender must act promptly to recover these amounts from your insurer(s) if you fail to make timely payments. YOUR INSURANCE COVERAGE WILL BE CANCELLED IF YOU DO NOT HONOR THE TERMS OF THE FINANCE AGREEMENT.
The notice also provided that "LENDER may request cancellation of the insurance policies listed in the schedule upon expiration of 10 days written notice of intent to cancel." Further, if payment was received after cancellation, there was no "liability or obligation on the part of LENDER to request reinstatement of such cancelled policy."
In both November 2003 and November 2004, Jimcor, on behalf of Penn America, sent Imperial a notice acknowledging receipt of the premium finance agreement. These notices of acceptance stated that "[w]e will honor cancellation requests providing all policy information and all legal requirements are correct." They also delineated the procedure for the return of unearned premiums.
*69 Beginning sometime in December 2004, Mystic repeatedly failed to make its premium finance payments on a timely basis. On each occasion, pursuant to the premium finance agreement, Imperial would send Mystic a notice of intent to cancel with an expiration date and, if payment was not made by then, a notice of cancellation with an effective date would be issued. When Imperial received Mystic's delinquent payment before the expiration date, Imperial would then request from the insurer reinstatement of the policy.
For example, on the occasion of Mystic's penultimate default, Imperial sent Mystic a Notice of Intent to Cancel Insurance Policies on May 9, 2005, listing a past due amount of $751.26, and an expiration date of May 22, 2005. On May 23, 2005, Imperial sent Mystic a Notice of Cancellation effective May 27, 2005. When Mystic thereafter paid the finance payments past due, Imperial sent a Notice of Request to Insurer for Reinstatement on June 1, 2005, stating that the delinquent funds had been paid on May 27, 2005. On June 8, 2005, Jimcor requested, through Suburban, that Mystic submit a "no known loss" letter for the period of May 23, 2005 through May 27, 2005. Mystic submitted the "no known loss" letter as requested on June 8, 2005 and Jimcor processed the reinstatement.
Mystic's last default, which triggered the policy cancellation at issue here, occurred sometime in June 2005. Consequently, on June 14, 2005, Imperial sent Mystic another notice of intent to cancel with an expiration date of June 26, 2005. On June 27, 2005, Imperial sent Mystic a notice of cancellation, effective July 1, 2005, and Mystic thereafter sent the delinquent payment to Imperial on July 8, 2005. On July 11, 2005, Imperial issued a Notice of Request to Insurer for Reinstatement, stating that Mystic had paid the delinquent amount on July 8, 2005. This notice stated:

IMPORTANT THE POLICIES LISTED ABOVE HAVE BEEN CANCELED REINSTATEMENT IS REQUESTED BY THE INSURED
To the Insurer: Lender canceled the schedule policy(s) on the cancellation date indicated because of a default by the insured under the terms of the premium finance agreement. The Insured's account is now current. The Insured has requested that you reinstate the above policy(s). Please immediately advise the Insured, their agent and Lender if the policy(s) will be reinstated or will remain cancelled.
IF THE INSURANCE IS TO REMAIN CANCELED, PLEASE PROMPTLY FORWARD THE RETURN PREMIUM TO THE LENDER.
To the Insured: The policy(s) listed above are canceled and are not in force unless the Insurance Company advises you to the contrary. If you are not advised promptly, contact your Insurance Agent. If your insurance coverage is not reinstated, all payments made following cancellation will be credited to your account. The fact that you continue to make loan payments to Lender does not mean your insurance is in force. . . . Only the Insurance Company(s) or your Agent can advise you as to the status of your insurance coverage.
Jimcor requested another "no known loss" letter from Mystic, through its broker Suburban, on July 15, 2005, for the period of July 1, 2005 through July 8, 2005. The request stated that "[i]f Jimcor does not receive this letter by 7/22/05, policy will be cancelled as per the Finance Company's cancellation date."
However, Mystic never submitted a "no known loss" letter. On September 9, 2005, *70 Jimcor processed the cancellation endorsement, which stated that the policy was cancelled effective July 1, 2005, and refunded the premium of $845.00. On September 27, 2005, Imperial issued a check for the return premium to Mystic.
On July 17, 2005, seventeen days after the policy's cancellation, the roof of the warehouse leased by Mystic collapsed, causing property damage to Mystic and its warehouse customers. As a result, Mystic and several of its customers filed lawsuits against plaintiff to recover for damages to the property stored at the warehouse. Plaintiff settled these claims after it reported them to its commercial general liability insurance carrier, Federal Insurance Company (Federal).
Plaintiff then filed suit to recover from Mystic's former insurer, Penn America, Mystic's retail insurance broker, Suburban, and Jimcor. Specifically, plaintiff's complaint sought a declaration under the Declaratory Judgment Act, N.J.S.A. 2A:16-50 to -62, that Penn America owed plaintiff, as an additional insured, a defense and indemnification. The complaint also alleged claims against Jimcor and Suburban for professional negligence in causing the policy to be improperly cancelled and for failing to reinstate it.[2]
All parties moved for summary judgment. Following argument, the trial court granted both Jimcor's and Penn America's motions for summary judgment, dismissing with prejudice all claims and cross-claims against them. The court denied Suburban's, plaintiff's, Matrix Realty's, and Federal's motions for summary judgment, and thereafter Suburban settled plaintiff's, Mystic's, and Matrix Realty's claims against it, effectively disposing of the entire matter.
On appeal, plaintiff argues that the trial court erred in: (1) ruling that Imperial had legal authority to cancel Mystic's insurance policy; (2) ruling that Penn America could affirmatively waive a policy requirement to the detriment of its insureds in order to permit Imperial to cancel the policy; and (3) granting summary judgment to Jimcor. We will address these issues in the order raised.

I.
Plaintiff contends that Imperial had no authority to act as Mystic's attorney-in-fact to cancel the policy because neither the power of attorney contained in the premium finance agreement nor the notice of acceptance referencing the power of attorney complied with statutes governing the creation of a valid power of attorney, which require Mystic's acknowledgment in front of a notary or other authorized person. We disagree.
The power of attorney statute, N.J.S.A. 46:2B-8.9, upon which plaintiff relies, provides that "[a] power of attorney must be in writing, duly signed and acknowledged in the manner set forth in [N.J.S.A.] 46:14-2.1." The statute provides for acknowledgment of a power of attorney as follows:
To acknowledge a deed or other instrument the maker of the instrument shall appear before an officer specified in [N.J.S.A.] 46:14-6.1 and acknowledge that it was executed as the maker's own act. To acknowledge a deed or other instrument made on behalf of a corporation *71 or other entity, the maker shall appear before an officer specified in [N.J.S.A.] 46:14-6.1 and state that the maker was authorized to execute the instrument on behalf of the entity and that the maker executed the instrument as the act of the entity.
[N.J.S.A. 46:14-2.1(a).]
And N.J.S.A. 46:14-6.1(a) states that:
The officers of this State authorized to take acknowledgments or proofs in this State, or in any other United States or foreign jurisdiction, are:
(1) an attorney-at-law;
(2) a notary public;
(3) a county clerk or deputy county clerk;
(4) a register of deeds and mortgages or a deputy register;
(5) a surrogate or deputy surrogate.
Here, the fact that the power of attorney did not meet the technical requirements of N.J.S.A. 46:14-2.1(a) and N.J.S.A. 46:14-6.1(a) did not render it invalid or unenforceable. Rather, Imperial was acting pursuant to a power of attorney expressly authorized by the Insurance Premium Finance Company Act (IPFCA), N.J.S.A. 17:16D-1 to -16, and therefore independently sustainable thereunder. See N.J.S.A. 17:16D-13(a). In other words, the power of attorney at issue here was created pursuant to the specific statutory authority of the IPFCA, and not the general power of attorney law, N.J.S.A. 46:2B-8.9.
We have previously upheld actions taken by a premium finance company acting as its insured's attorney-in-fact pursuant to a finance agreement authorized by the IPFCA in the face of seemingly conflicting statutory requirements. In Carreon v. Hospitality Linen Services of New Jersey, 386 N.J.Super. 504, 902 A.2d 278 (App.Div. 2006), a premium finance company sought cancellation of an insured's workers' compensation policy due to the insured's failure to make the monthly installment payments. Id. at 506-07, 902 A.2d 278. We held that the premium finance company had the power to act as the insured's attorney-in-fact pursuant to the finance agreement, and thus, the workers' compensation insurer was not required to send the insured the notice of cancellation provided in the Employers' Liability Insurance Law, N.J.S.A. 34:15-81. Id. at 506, 902 A.2d 278. We concluded, citing N.J.S.A. 17:16D-13(c), that the premium financing company had legally stepped into the shoes of the insured, thereby transforming the request to cancel as if it had originated from the insured. Ibid.
In so holding, we relied on our opinion in Auger v. Gionti Agency, 218 N.J.Super. 360, 368-69, 527 A.2d 928 (App.Div.), certif. granted, 109 N.J. 504, 537 A.2d 1293 (1987), appeal dismissed, 113 N.J. 348, 550 A.2d 459 (1988). There, an insurance agent, who was found negligent for not taking appropriate action to assure coverage for plaintiff, appealed the trial court's grant of summary judgment in favor of the automobile insurance carrier. Id. at 367, 527 A.2d 928. The trial court held in pertinent part that the policy had been cancelled by the carrier at the request of the premium financing company, in conformity with N.J.S.A. 17:16D-13. Id. at 362, 527 A.2d 928.
The defendant insurance agent in Auger, supra, argued that the carrier's failure to give plaintiff notice of cancellation as required by N.J.S.A. 17:29C-8 invalidated the purported cancellation. Id. at 367, 527 A.2d 928. We rejected this argument:
[T]he provisions of N.J.S.A. 17:29C-8 have no application where it is the insured, or the premium finance agency acting in his place pursuant to a power of attorney authorized by statute, who *72 requests cancellation of his policy. The power of attorney given to the premium finance company by an insured allows that company to cancel the policy "as if such notice of cancellation had been submitted by the insured himself. . . ." N.J.S.A. 17:16D-13(c). Hence, we conclude that the two statutory schemes are complementary rather than in conflict and must be construed harmoniously. Because the premium finance agreement signed by plaintiff included a provision giving [the premium finance company] the power of attorney to cancel the policy, the provisions of N.J.S.A. 17:16D-13 control.
[Id. at 368, 527 A.2d 928 (citations omitted).]
In neither of these cases was there any suggestion that the power of attorney authorized by the IPFCA, specifically, N.J.S.A. 17:16D-13(a), had to conform to the requirements of N.J.S.A. 46:14-2.1(a) and N.J.S.A. 46:14-6.1(a). On the contrary, in the face of dueling statutory schemes, we have consistently held that where the insured expressly gives its premium financing company a power of attorney to act on its behalf in canceling the policy, the provisions of N.J.S.A. 17:16D-13 control.
Even assuming that the power of attorney could only have been created if validly acknowledged, Jimcor, and therefore Penn America, still had the right to rely on it in canceling the policy because of Imperial's apparent authority to act on behalf of Mystic. Our Supreme Court recently discussed apparent authority in an agency relationship:
An agency relationship is created "when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006) (internal quotation marks omitted). Generally, an agent may only bind his principal for such acts that "are within his actual or apparent authority." Carlson v. Hannah, 6 N.J. 202, 212, 78 A.2d 83 (1951) (citation omitted). Actual authority occurs "when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency, supra, § 2.01. Apparent authority arises "when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Id. § 2.03. The doctrine of apparent authority "focuses on the reasonable expectations of third parties with whom an agent deals." Id. § 7.08 comment b. Therefore "a court must examine the totality of the circumstances to determine whether an agency relationship existed even though the principal did not have direct control over the agent." [Sears Mortg. Corp. v. Rose, 134 N.J. 326, 338, 634 A.2d 74 (1993)].
[N.J. Lawyers' Fund for Client Prot. v. Stewart Title Guar. Co., 203 N.J. 208, 220, 1 A.3d 632 (2010).]
A party seeking to rely on the apparent authority of a putative agent must establish:
(1) that the appearance of authority has been created by the conduct of the alleged principal and it cannot be established alone and solely by proof of [conduct by] the supposed agent; (2) that a third party has relied on the agent's apparent authority to act for a principal; and (3) that the reliance was reasonable under the circumstances.

*73 [Mercer v. Weyerhaeuser Co., 324 N.J.Super. 290, 318, 735 A.2d 576 (App. Div.1999) (alteration in original) (citations and internal quotation marks omitted).]
Imperial had apparent authority to act for Mystic, and Jimcor was entitled to rely on that apparent authority in canceling the policy. Jimcor had received no notice that the power of attorney was invalid. The appearance of authority had been created by the conduct of Mystic, as Mystic allowed Imperial to procure the insurance policy, and also allowed the policy to be renewed for a second year under the premium finance agreement. Also, Imperial informed Mystic on several occasions that it would request cancellation of the policy because of nonpayment, which Mystic responded by paying its past due amounts. Finally, Jimcor, as a third party, relied on Imperial's apparent authority to act for Mystic in canceling the policy, and that reliance was reasonable given that Imperial had procured the policy for Mystic in the first place and had acted on behalf of Mystic for years without issue.

II.
Plaintiff next argues that the following policy language barred Mystic from transferring to Imperial its right to cancel the policy:[3]
F. Transfer Of Your Rights and Duties Under This Policy Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named Insured.
The trial court rejected this argument:
That provision that you're relying on is not for the benefit of the insured, it's to protect Penn America from having the insures [sic] do something wrong by assigning out the insurance policy to somebody else who Penn America has no knowledge or relationship with.
We agree that the "consent to assignment" provision is for the benefit of the insurer and thus the insurer may waive it. "[T]he purpose behind a no-assignment clause in a casualty or liability policy . . . is to protect the insurer from insuring a different risk than intended." Elat, Inc. v. Aetna Cas. & Sur. Co., 280 N.J.Super. 62, 67, 654 A.2d 503 (App.Div. 1995). Clearly, the clause in issue protects Penn America from having its insured transfer its rights without the insurer's consent. Moreover, "`[i]t is elementary that an insurer may waive any provision for its benefit and may waive any representation, warranty, condition or limitation in the policy upon which it would otherwise be entitled to rely.'" Iafelice ex rel. Wright v. Arpino, 319 N.J.Super. 581, 588, 726 A.2d 275 (App.Div.1999) (quoting Bruni v. Prudential Ins. Co. of Am., 100 N.J.Super. 154, 163, 241 A.2d 455 (App.Div. 1967), rev'd on dissent, 51 N.J. 408, 241 A.2d 449 (1968)). Thus, because the "no-assignment" clause inures to the benefit of Penn America only, and the insured receives no benefit therefrom, it may be waived by the insurer. In short, this policy provision did not operate to prevent Imperial from effectuating a valid cancellation of the policy.
In fact, the "consent to assignment" provision is not even applicable here. In entering into the premium financing agreement, Mystic gave Imperial *74 a power of attorney to act on its behalf. "`A power of attorney is an instrument in writing by which one person, as principal, appoints another as his agent and confers upon him the authority to perform certain specified acts or kinds of acts on behalf of the principal.'" Kisselbach v. Cnty. of Camden, 271 N.J.Super. 558, 564, 638 A.2d 1383 (App.Div.1994) (quoting Bank of Am., Nat'l Trust & Sav. Ass'n v. Horowytz, 104 N.J.Super. 35, 38, 248 A.2d 446 (Cty.Ct. 1968)). "`Its primary purpose is not to define the authority conferred on the agent by the principal, but to serve as evidence to third persons of agency authority.'" Ibid. (quoting Bank of Am., supra, 104 N.J.Super. at 38, 248 A.2d 446). Thus, Mystic did not need to transfer its rights under the policy in order for Imperial to act on its behalf. Imperial already had the ability to act on Mystic's behalf as its agent under the power of attorney clause. Accordingly, there was no assignment of rights.

III.
Plaintiff's final argument that the court erred in granting summary judgment to Jimcor lacks merit, Rule 2:11-3(e)(1)(E), as there was no competent proofexpert or otherwisethat Jimcor was professionally negligent and therefore Jimcor was entitled to summary judgment as a matter of law. R. 4:46-2.
We discern no suggestion of professional negligence in Jimcor's demand of Mystic for a "no known loss" letter as a precondition to reinstatement of the policy, despite there being no express provision in the policy for such. Jimcor's request for a "no known loss" letter related to the insurability of the risk and was reasonable and necessary underwriting information, clearly allowable under the policy.
Moreover, the fact that Imperial paid the financed amount to Suburban for remittance to Jimcor and not directly to Jimcor, did not negate Imperial's right to cancel the policy for nonpayment of premiums. And, in this regard, Jimcor properly relied on the power of attorney contained in the premium finance agreement in issuing a cancellation endorsement to the policy. Furthermore, Jimcor's cancellation endorsement of September 9, 2005, did not contain false information, as plaintiff alleged, since Mystic had agreed to cancellation of the policy for non-payment by entering into the premium finance agreement and accepting the insurance coverage.
Lastly, Jimcor's late remittance of the unearned premium to Imperial violated neither N.J.S.A. 17:16D-14, as argued by plaintiff, nor any legal duty owed Imperial. N.J.S.A. 17:16D-14 regulates the conduct of premium finance companies and not wholesale brokers such as Jimcor, and provides no basis to hold Jimcor liable for the late return of the premium. Instead, the provision only provides for a penalty equal to five percent of the amount due to the insured against the premium finance company, if the premium finance company does not return the premium to the insured in a timely manner. In sum, in the absence of any genuine issue of material fact, Jimcor was entitled to summary judgment as a matter of law.
Affirmed.
NOTES
[1] The spelling of Penn America Insurance Company is inconsistent. While Penn America refers to itself as Penn-America in its brief and notice of cross-appeal, the other parties and certain of the Law Division's orders do not hyphenate the name.
[2] Plaintiff subsequently filed two amended complaints, the first naming Matrix Realty and Mystic as interested parties, pursuant to N.J.S.A. 2A:16-56, and the second including Federal as an individual plaintiff and equitable subrogee of plaintiff. Mystic and Matrix Realty filed cross-claims against Penn America, Jimcor and Suburban, seeking the same relief sought by plaintiff.
[3] The right-to-cancel provision of the policy provides:

A. Cancellation
1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation. . . .