NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3519-19

JUSTIN GAYLES, an
infant by his G/A/L,
Gwendolyn Gayles, and
GWENDOLYN GAYLES,
Individually,

Plaintiff-Respondent,

v.

SKY ZONE TRAMPOLINE PARK,

Defendant-Appellant,

and

GO AHEAD AND JUMP 3, LLC,
D/B/A SKY ZONE MOUNT OLIVE
I/P/A SKY ZONE TRAMPOLINE
PARK,

Third-Party Plaintiff-Appellant,

v.

JOAN TONGOL,

Third-Party Defendant-Respondent.
_____

> APPROVED FOR PUBLICATION
>
> **May 12, 2021**
>
> APPELLATE DIVISION

Submitted March 15, 2021 – Decided May 12, 2021

Before Judges Messano, Suter and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1530-18.

Wood Smith Henning & Berman, LLP, attorneys for appellants (Kelly A. Waters, of counsel and on the briefs; Carolynn A. Mulder, on the briefs).

Bendit Weinstock, PA, attorneys for respondent (Kay A. Gonzalez, on the brief).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

Joan Tongol invited several friends of her minor son to celebrate his birthday at Sky Zone Trampoline Park in Mount Olive, operated by defendant Go Ahead and Jump 3, LLC. Tongol told the children's parents that she had reserved time for a group of ten, and the parents could drop their children off with Tongol, who would drive them to the trampoline park. On the day of the party, plaintiff Gwendolyn Gayles drove her son Justin, also a minor, to the Tongol home. Justin and Tongol's son had been classmates since grade school.

Tongol had booked the reservation online. On arrival at Sky Zone, after she checked in and paid for the group, Tongol was directed to a "waiver station," where she had to complete and sign an agreement (the Agreement) displayed on a computer screen. In a section, "Included Minors," Tongol listed every child with his or her birthdate, which she obtained by asking the children. At her deposition, Tongol described the process as "quick," and she

completed the Agreement without reading it fully and without any assistance from defendant's staff.

The Agreement contained separate paragraphs with boxes next to each to click on and check. The introductory paragraph stated: "I[,] on behalf of myself, my spouse, my children, my parents, my heirs, my assigns, personal representatives, estate, and insurers, agree as follows." The first paragraph read in part: "I further certify that I am the parent or legal guardian of the child(ren) listed above on this Agreement or that I have been granted power of attorney to sign this Agreement on behalf of the parent or legal guardian of the child(ren) listed in this Agreement."

The second paragraph read in part: "I have had sufficient opportunity to read this entire document. I understand this Agreement and I voluntarily agree to be bound by its terms. I understand that this Agreement waives certain rights that I have in exchange for permission to gain access to the Location." The paragraph then listed those rights that were waived, including: (a) "the right to sue . . . in a court of law"; (b) "the right to a trial by judge or jury"; (c-d) "the right to claim money . . . for accidents causing injury within the scope of the risk assumed" or for any accident unless defendant "committed acts of gross negligence or willful and wanton misconduct"; and (e) "the right to file a claim . . . if I wait more than one year from the date of this Agreement."

The fourth paragraph, entitled "Waiver of Trial, and Agreement to Arbitrate," read in capitalized print:

> IF I AM INJURED AND . . . MAKE A CLAIM AND/OR IF THERE ARE ANY DISPUTES REGARDING THIS AGREEMENT, I HEREBY WAIVE ANY RIGHT I HAVE TO A TRIAL IN A COURT OF LAW BEFORE A JUDGE AND JURY. I AGREE THAT SUCH DISPUTE . . . WILL BE DETERMINED BY BINDING ARBITRATION BEFORE ONE ARBITRATOR TO BE ADMINISTERED BY JAMS PURSUANT TO ITS COMPREHENSIVE ARBITRATION RULES AND PROCEDURES.

This section continued by stating that if despite her "express agreement to arbitrate any claims of injury," Tongol initiated a lawsuit, she would pay $5000 in liquidated damages within sixty days.

Additional paragraphs included an exhaustive waiver of the right to bring suit by those eighteen-years of age or older, unless the injury was caused "by [defendant's] greater than ordinary negligence," and it also included an agreement to indemnify defendant for counsel fees. Tongol checked all the boxes and electronically signed the Agreement.

None of the children's parents had executed a power of attorney in favor of Tongol, but she believed they had authorized her to sign the Agreement on behalf of the children. While playing on the trampolines, Justin fractured his leg.

4

Plaintiff filed her complaint individually and as Justin's guardian ad litem alleging defendant was negligent. The judge denied defendant's motion to dismiss and compel arbitration, as well as its motion for reconsideration; defendant filed an answer and third-party complaint naming Tongol as third-party defendant.

After completion of some discovery, Tongol moved for summary judgment, and defendant cross-moved for summary judgment to dismiss plaintiff's complaint and compel arbitration. Judge Noah Franzblau denied both motions. Defendant sought reconsideration, which the judge also denied, and this appeal followed.[1]

Before us, defendant argues the judge erred in denying summary judgment and not compelling arbitration because Tongol "had apparent authority to execute the Agreement on [plaintiff's] behalf." It also contends that Tongol's apparent authority meant the Agreement was not void and unenforceable, as the judge found. Lastly, defendant argues that "the implications" of the order denying arbitration "places an unreasonable, if not impossible, burden on . . . defendant to verify and validate the certifications made by all adult patrons who accompany minors" to its facility.

---

[1] Defendant's appeal is limited solely to the order denying its motion for summary judgment and to compel arbitration. Tongol has not sought leave to appeal from the denial of her summary judgment motion.

We have considered these arguments in light of the record and applicable legal standards. We affirm.

I.

We review the decision on a motion for summary judgment de novo, applying the same standard used by the trial court, which

> mandates that summary judgment be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."
>
> [Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).]

A dispute of material fact is "genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). We owe no deference to the trial court's legal analysis, The Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017) (citing Zabilowicz v. Kelsey, 200 N.J. 507, 512 (2009)), and we limit our review to the motion record. Ji v. Palmer, 333 N.J. Super. 451,

463–64 (App. Div. 2000) (citing Bilotti v. Accurate Forming Corp., 39 N.J. 184, 188 (1963)).

Usually, an order denying summary judgment is not appealable as of right, because the denial of summary judgment "decides nothing and merely reserves issues for future disposition." Gonzalez v. Ideal Tile Importing Co., 371 N.J. Super. 349, 356 (App. Div. 2004). However, an order compelling or denying arbitration is appealable as of right. R. 2:2-3(a). Our summary judgment standard of review remains the same. See Moore v. Woman to Woman Obstetrics & Gynecology, LLC, 416 N.J. Super. 30, 40 (App. Div. 2010) (recognizing standard applies to review of summary judgment compelling enforcement of arbitration agreement).

"De novo review applies when appellate courts review determinations about the enforceability of contracts, including arbitration agreements." Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019) (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)). "Whether a contractual arbitration provision is enforceable is a question of law, and we need not defer to the interpretative analysis of the trial . . . court[] unless we find it persuasive." Ibid. (citing Morgan v. Sanford Brown Inst., 225 N.J. 289, 302–03 (2016)).

Although "arbitration [is] a favored method for resolving disputes . . . [t]hat favored status . . . is not without limits." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., PA, 168 N.J. 124, 131–32 (2001). "A court must first apply 'state contract-law principles . . . [to determine] whether a valid agreement to arbitrate exists.'" Hirsch, 215 N.J. at 187 (alteration in original) (quoting Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006)). "This preliminary question, commonly referred to as arbitrability, underscores the fundamental principle that a party must agree to submit to arbitration." Ibid. (citing Garfinkel, 168 N.J. at 132); see also Kernahan, 236 N.J. at 319 ("[A] court's initial inquiry must be — just as it is for any other contract — whether the agreement to arbitrate . . . is 'the product of mutual assent, as determined under customary principles of contract law.'" (quoting Atalese v. U.S. Legal Servs. Grp., LP, 219 N.J. 430, 442 (2014))). "[T]he arbitrability analysis is expressly included in the Arbitration Act." Hirsch, 215 N.J. at 187–88 (citing N.J.S.A. 2A:23B-6(b)).

Here, Judge Franzblau properly focused not on the question of arbitrability, but rather whether on the motion record presented, defendant demonstrated as a matter of law that Tongol possessed apparent authority to act on plaintiff's behalf, enter into the Agreement as her agent, and bind

plaintiff to its terms, which included the arbitration provision and other waivers.

## II.

The judge relied extensively on our decision in Mercer v. Weyerhaeuser Co., in which future Justice Virginia Long, outlined the contours of the doctrine of apparent authority. 324 N.J. Super. 290 (App. Div. 1999). We explained, "Apparent authority imposes liability on the principal not as a result of an actual contractual relationship, but because the principal's actions have misled a third-party into believing that a relationship of authority in fact exists." Id. at 317–18 (citing Blaisdell Lumber Co. v. Horton, 242 N.J. Super. 98, 102–03 (App. Div. 1990)). The party seeking to rely on the apparent authority of a putative agent bears the burden of proof. Id. at 318. That party

> must establish, (1) that the appearance of authority has been created by the conduct of the alleged principal and it cannot be established "alone and solely by proof of [conduct by] the supposed agent," (2) that a third party has relied on the agent's apparent authority to act for a principal, and (3) that the reliance was reasonable under the circumstances.
>
> [Ibid. (emphasis added) (citations omitted) (first quoting Blaisdell Lumber, 242 N.J. Super. at 103; and then quoting Hoddeson v. Koos Bros., 47 N.J. Super. 224, 232 (App. Div. 1957)).]

Judge Franzblau rejected defendant's arguments that plaintiff's actions — leaving Jason at Tongol's home and in her custody and care and allowing

9

her to take him to the party knowing he would participate in activities at Sky Zone — created an appearance of Tongol's authority to execute the Agreement on plaintiff's behalf. He noted there was nothing in the record indicating plaintiff knew a waiver needed to be executed to permit Jason's entry to the trampoline park, and defendant was unaware of the circumstances by which Jason came to be in Tongol's custody and care when Tongol executed the Agreement.

To the extent defendant relied upon Tongol's execution of the Agreement and her representation that she was the parent, guardian, or possessed a power of attorney for the children, the judge noted defendant's employees never questioned Tongol about her representations, nor did it take note that she signed the Agreement on behalf of ten children with eight different surnames. Judge Franzblau concluded that certainly without questioning Tongol or otherwise verifying her statement on the Agreement, defendant's reliance on Tongol's representations of authority was unreasonable. We agree completely with his analysis.

Compare these facts with those presented in AMB Property, LP v. Penn America Insurance Company, 418 N.J. Super. 441 (App. Div. 2011). There, relying on Mercer and the Restatement (Third) of Agency (Am. Law Inst. 2006), we concluded that an insurance company and its agent were entitled to

10                                                                    A-3519-19

summary judgment based on the apparent authority of the tenant's lender to act on the tenant's behalf when they cancelled a tenant's liability policy for nonpayment. AMB, 418 N.J. Super. at 454. We noted that the tenant had permitted the lender to procure the policy on its behalf, renewed the policy under the terms of the lender's financial agreement with the tenant, and "had acted on behalf of [the tenant] for years without issue." Id. at 454–55.

We can find no decision, and defendant fails to bring any to our attention, in which someone who was not the child's parent, guardian, or attorney-in-fact possessed the requisite actual or apparent authority to execute a waiver of rights regarding the minor's personal injury claims. See, e.g., Moore, 416 N.J. Super. at 45 (holding there is no legal theory that would permit one spouse to bind another to an agreement waiving the right to trial without securing consent to the agreement).

Under somewhat similar facts, in Munoz v. II Jaz, Inc., the Texas Court of Appeals reversed the grant of summary judgment to an amusement park operator based upon the execution of a waiver of liability by the minor child's adult sister, who accompanied the child to the park. 863 S.W.2d 207, 208 (Tex. App. Ct. 1993). The court rejected the defendant's reliance on the doctrine of apparent authority, noting "[w]hen considering a question of apparent authority, one must look only to the acts of the principal; the acts of

11

the agent are irrelevant." Id. at 209 (citing Moody v. EMC Servs. Inc., 828 S.W.2d 237, 241 (Tex. App. Ct. 1992)). Based on the motion record, the court concluded the defendant amusement park "fail[ed] to resolve the issues concerning the adult daughter's authority to waive both [the child's] and the parents' causes of action." Ibid.

In Mercer, we cited the Restatement (Second) of Agency § 267 (Am. Law Inst. 1958), for support in discussing the doctrine of apparent authority. 324 N.J. Super. at 317. The Court has since recognized and adopted the updated Restatement (Third) of Agency. See Bridgewater-Raritan Educ. Ass'n v. Bd. of Educ., 221 N.J. 349, 363–64 (2015); N.J. Laws.' Fund for Client Prot. v. Stewart Title Guar. Co., 203 N.J. 208, 220 (2010). We review some of the relevant sections and comments from the Restatement (Third) of Agency, which only lend further support to our conclusion.

"An agency relationship is created 'when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.'" Stewart Title Guar. Co., 203 N.J. at 220 (quoting Restatement (Third) of Agency, § 1.01 (internal quotation marks omitted)). Plaintiff agreed that Tongol would take plaintiff to Sky Zone, and, for that limited purpose, Tongol was the agent and plaintiff the principal.

However, "[g]enerally, an agent may only bind his principal for such acts that 'are within his actual or apparent authority.'" Ibid. (quoting Carlson v. Hannah, 6 N.J. 202, 212 (1951)).

Defendant does not contend Tongol had actual authority to execute the Agreement on plaintiff's behalf; rather, it asserts it held a reasonable belief in Tongol's apparent authority. "Apparent authority arises 'when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.'" Ibid. (emphasis added) (quoting Restatement (Third) of Agency, § 2.03). Critically, "an agent's apparent authority originates with expressive conduct by the principal toward a third party through which the principal manifests assent to action by the agent with legal consequences for the principal." Restatement (Third) of Agency, § 3.03 cmt. b (emphasis added).

Generally, a trier of fact will determine "whether a reasonable person in the position of a third party would believe that an agent had the authority or the right to do a particular act. It is a separate but related question of fact whether such a belief is traceable to a manifestation of the principal." Id. at § 2.03 cmt. d. "In some settings, the principal's acts speak so loudly that explicit verbal communication is unnecessary. Similarly, an indirect route of communication between a principal and third party may suffice, especially

when it is consistent with practice in the relevant industry."  Id. at § 3.03 cmt. b.  Defendant is correct that "[t]he customs or practices of a particular industry shape" the context in which the third party observes the agent and has a "bearing upon the reasonableness of any belief that a particular agent has been authorized by the principal to do any particular act."  Id. at § 2.03 cmt. d.

Here, however, plaintiff engaged in no "expressive conduct," and no direct or "indirect . . . communication" with defendant.  There was no relevant "practice" or pattern of conduct between plaintiff and defendant.  Defendant cannot rely solely on its own general admission procedure to support the reasonableness of its belief that Tongol had authority to act for plaintiff and execute the Agreement waiving her and her son's significant rights.[2]

Lastly, defendant argues that the dismissal of its summary judgment motion places an unreasonable burden upon it and similar recreational

---

[2]  The Court's holding in Hojnowski demonstrates a further legal flaw in defendant's position.  There, the Court held that the plaintiff-parent's execution of a pre-injury release of her minor child's future tort claims as a condition of admission to the skate park was unenforceable, although the Court upheld the arbitration provisions of the release.  187 N.J. at 338, 346.  In other words, the parent lacked the legal capacity to execute a release of her own child's tort claims.  We need not decide under the facts presented whether the Agreement plaintiff executed on her son's behalf in this case would be enforceable in all respects as a matter of law.  We note, however, that pursuant to the Restatement (Third) of Agency, § 3.04(1), a principal has the capacity to act through an agent only if, at the time of the agent's actions, the principal herself "would have the capacity if acting in person."

businesses. In essence, defendant contends its business model would be untenable if it were required to secure consent or powers-of-attorney from the parents of each juvenile participant at its facility. The argument lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Defendant could include a document on its website or as an attachment to its confirmation email for parents to sign and upload or bring to the facility, similar to the procedure utilized all the time for school trips and the like.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15