**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3180-21

IN THE MATTER OF
THOMAS VALENTE,
WEST MILFORD,
POLICE DEPARTMENT.

_____

Argued September 19, 2022 – Decided October 14, 2022

Before Judges Currier, Mayer and Enright.

On appeal from an interlocutory decision of the New Jersey Civil Service Commission, Docket No. 2022-913.

Deena B. Rosendahl argued the cause for appellant Township of West Milford (Decotiis, Fitzpatrick, Cole & Giblin, LLP, attorneys; Deena B. Rosendahl, on the briefs).

Charles Sciarra argued the cause for respondent Thomas Valente (Sciarra & Catrambone, LLC, attorneys; Frank C. Cioffi, of counsel and on the brief).

Matthew J. Platkin, Acting Attorney General, attorney for respondent New Jersey Civil Service Commission (Pamela N. Ullman, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

By way of leave granted, the Township of West Milford (Township) appeals from an April 6, 2022 decision by the New Jersey Civil Service Commission (Commission) remanding a disciplinary matter involving Thomas Valente to the Office of Administrative Law (OAL) for a hearing. Because we conclude the parties had an enforceable settlement agreement, the Commission acted arbitrarily and capriciously in its final order overturning a decision by an administration law judge, we reverse.

In 2021, the Township received an anonymous complaint regarding Valente, who was then a member of the West Milford Police Department (Department). After investigating the allegations in the complaint, the Department charged Valente with neglect of duty, neglect of supervision, violation of departmental policy, and lying during an internal affairs investigation. On May 12, 2021, Valente received the results of the investigation.

On May 27, 2021, Valente's attorney at the time, Michael J. Mitzner, entered a not guilty plea to the Department's charges and requested a hearing. The Department scheduled a hearing for June 21, 2021. About a week prior to the hearing, counsel for Valente and the Township had a telephone conference. During this conference, Mitzner proposed a settlement of the charges against

Valente. The Township attorney asked Mitzner to submit the settlement proposal in writing.

In a June 15, 2021 email transmitted at 12:53 in the afternoon, Mitzner sent a detailed document to the Township attorney containing the essential terms of the settlement. The document included a date for Valente's resignation such that Valente would achieve a pension based on fifteen years of service with the Department. The agreement also contained provisions allowing Valente to obtain an identification card as a retired police officer, a permit to carry a weapon, and assistance from the Department if Valente sought future employment in the security field.

The Township responded the same day in an email transmitted to Mitzner at 5:18 in the evening. According to the email, the Township accepted some terms, rejected some terms, and modified some terms.

Mitzner telephoned the Township attorney the following day, June 16, 2021, and accepted the terms of the settlement per the Township's June 15 email. The Township again requested Valente's attorney provide written confirmation of the settlement.

In a June 16, 2021 email sent to the Township attorney at 2:44 in the afternoon, Mitzner confirmed the terms of the settlement were "acceptable to Lt.

Valente, subject to working out the actual language and preparing a formal Agreement." In the same email, Mitzner included the following statement: "We understand that the June 21, 2021 Hearing has been adjourned and that you will get us a draft of a proposed formal Agreement within the next few days."

On June 18, 2021, the Township attorney forwarded the agreement to Mitzner, indicating the document would be revised upon receipt of a list of specific equipment to be returned by Valente to the Department. Mitzner did not respond to the Township attorney's June 18 email.

On June 21, 2021, the Township attorney sent an email with the settlement document, including the specific equipment to be returned by Valente. The document otherwise remained unchanged from the document accepted by Valente's attorney on June 16. Mitzner did not respond to the Township attorney's June 21 email. Consistent with Mitzner's June 16, he and Valente did not appear at the disciplinary hearing scheduled for June 21, 2021 because Mitzner "underst[ood] that the June 21, 2021 hearing ha[d] been adjourned . . . ."

Thereafter, Valente retained a new attorney, Frank Cioffi, who signed a formal substitution of attorney on July 1, 2021. On July 9, 2021, Cioffi sent a

letter to the Township attorney enclosing the substitution, entering a not guilty plea to the disciplinary charges against Valente, and requesting a hearing.

In a July 15, 2021 letter, the Township attorney advised Cioffi the matter was settled. Cioffi maintained the matter was not settled and repeated his demand to schedule a disciplinary hearing. In a July 21, 2021 letter, the Township attorney maintained a settlement was reached but agreed to hold a hearing on August 11, 2021 without prejudice. The Township attorney stated the Township was not waiving any rights by conducting a hearing and "reserve[d] the right to continue to assert a settlement ha[d] been reached."

At the start of the disciplinary hearing on August 11, 2021, the Township attorney stated the following:

> I would like the record to . . . reflect that the Township has agreed to proceed with the disciplinary hearing today but reserves its right to maintain that we don't owe [Valente] the hearing because a settlement was in fact reached and we do intend to pursue enforcing the terms of the settlement, but in the interest of due process and preserving the record, we've agreed to conduct the hearing this morning.

At the conclusion of the hearing, the hearing examiner sustained the Department's imposition of discipline, resulting in Valente's termination. The hearing examiner found Valente lied during the internal affairs investigation.

As a result of that finding, the hearing examiner determined the Attorney General Guidelines mandated termination.

Because the hearing officer sustained the disciplinary charges and imposed termination, the Township issued a Final Notice of Disciplinary Action and removed Valente from his position with the Department effective October 4, 2021. The next day, Valente appealed to the Commission and the Commission referred the matter to the OAL. Thereafter, the Township filed a separate declaratory judgment action in the New Jersey Superior Court seeking to enforce the settlement.

The OAL assigned the matter to an Administrative Law Judge (ALJ) for a hearing. During a status conference, the ALJ learned of the Superior Court action. Rather than litigate in two separate forums, the parties consented to the ALJ hearing a future motion seeking to enforce the settlement.

The Township filed a motion to enforce the settlement and the ALJ considered the written submissions and arguments of counsel on February 11, 2022. The Township argued a full and final settlement had been reached with Valente based on Mitzner's actions. Valente contended Mitzner lacked actual or apparent authority to settle the matter on his behalf and therefore no

6

settlement was reached. Valente did not submit a certification or affidavit in support of his arguments.

In a February 28, 2022 written decision, the ALJ concluded Valente authorized Mitzner to enter into the settlement, the agreement included all of the essential terms of the settlement, and there was no contrary evidence offered by Valente creating a genuine dispute of material fact to warrant a plenary hearing. The ALJ found Mitzner had both actual and apparent authority to enter into the settlement based on the June 15 and 16 email exchanges. In reviewing Mitzner's June 16 email to the Township attorney, the ALJ found "it is clear that Lt. Valente was not only aware of the settlement negotiations, but also had been apprised of and had approved the revisions to the original settlement proposal by [the Township]." The judge noted the June 21 disciplinary hearing was adjourned "as a direct consequence of this e-mail." The judge wrote:

> This is not a case of a passive, uninvolved party whose attorney ran amok. Rather, per the e-mails, there had been very specific discussions concerning reasoning behind the terms of the agreement, which was to achieve an outcome most favorable to [Valente's] future employment. When a counterproposal was propounded by [the Township], per Mr. Mitzner, this was specifically discussed and approved by Lt. Valente.

The ALJ found Valente presented no evidence to infer: (1) "[Mitzner] did not represent Lt. Valente"; (2) "[Mitzner] was not authorized to enter into

7

settlement negotiations with [the Township]"; and (3) "[Mitzner] was not authorized to accept the settlement terms offered by [the Township]."

Based on these findings, the ALJ held "Mr. Mitzner had, at the very least, implied actual authority from Lt. Valente to not only enter into settlement negotiations on his behalf, but also to enter into a settlement agreement." Even if no actual authority existed, the ALJ determined "the manner in which the negotiations played out would lead [the Township] to believe that . . . Mr. Mitzner had such (apparent) authority."

After determining Mitzner had authority to enter into a settlement on Valente's behalf, the ALJ then considered whether the agreement "was sufficient to constitute a settlement." In reviewing the email exchanges, specifically Mitzner's June 16 email to the Township attorney, the ALJ found:

> There is no legitimate question that the document attached to the emails . . . , upon which both parties commented on and revised, contained all the "essential terms" of any potential settlement. It was very detailed, covering topics such as liability admissions, administrative closure of charges, terms of employment separation, accrued time, waivers, confidentiality, return of property, non-disparagement, attorney's fees, etc.

While the ALJ acknowledged the agreement was subject to review by the Township's mayor, he found the subsequent actions by the Township attorney,

8

including the updated agreement with a list of property to be returned by Valente, and the July 15 and July 21 letters, "clearly indicated that a settlement had been reached." The ALJ concluded "there is no legitimate question of fact that [the Township] considered this matter settled, subject to what is clearly mandatory approval by the governing body and that this was unequivocally communicated to [Valente]."

Lastly, the ALJ held there was no need for a hearing "to flesh out the positions of the part[ies]" because Valente failed to provide evidence suggesting Mitzner lacked authority to settle the matter on his behalf, failed to communicate the terms of the settlement, or that Valente did not agree to the settlement per the June 15 and 16 emails. Nor was there a certification or affidavit from Mitzner creating a factual issue regarding the settlement. The ALJ concluded "the manner in which this unfolded is indicative of a party having second thoughts about what he had agreed to and not that he had never authorized or agreed to the settlement."

Based on these findings, the ALJ granted the Township's motion to enforce the settlement and dismissed Valente's appeal.

Valente filed exceptions with the Commission and the Township responded. In an April 6, 2022 decision, the Commission declined to adopt the

ALJ's determination. Notably, the Commission did not reject the ALJ's factual findings.

In its decision, the Commission acknowledged settlements are strongly favored and should be set aside only where there is fraud or other compelling circumstances. Because the Department proceeded with the disciplinary hearing on August 11, 2021, the Commission found "[t]he actions by the [Township] cut against its argument that a valid settlement had been reached as there would be no need for a such a hearing if there was truly a settlement." The Commission also noted "while [Valente]'s prior attorney may have had the authority to settle the matter, there is no indication that [Valente] ever signed any document memorializing the terms of the settlement." While recognizing Valente's failure to physically sign the document was not dispositive, the Commission concluded "given the [Township]'s contrary actions . . . , to dismiss [Valente]'s appeal on this basis would be inequitable." The Commission remanded the matter to the OAL for a hearing on the merits of the disciplinary charges against Valente.

The Township filed a motion for leave to appeal the Commission's decision. In a June 20, 2022 order, we granted leave to appeal and accelerated the matter on the calendar.

On appeal, the Township argues that the Commission's decision was arbitrary, capricious, and unreasonable, contrary to established case law, and not based on substantial evidence in the record. Further, the Township contends the Commission acted beyond the scope of its authority by directing a hearing on the merits. We agree and reverse.

We have "a limited role" in reviewing agency decisions. Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980). "Ordinarily, an appellate court will reverse the decision of [an] administrative agency only if it is arbitrary, capricious or unreasonable or it is not supported by substantial evidence in the record as a whole." Id. at 579-80 (citing Campbell v. Dep't of Civ. Serv., 39 N.J. 556, 562 (1963)). An agency action is arbitrary, capricious, or unreasonable if it violates the law, if the record does not contain substantial evidence to support it, or if the agency's conclusion could not reasonably have been reached on a showing of the relevant factors. George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994) (citing Campbell, 39 N.J. at 562).

The burden is on the appealing party to demonstrate grounds for reversal. Matter of State & Sch. Emps.' Health Benefits Comm'ns' Implementation of I/M/O Yucht, 233 N.J. 267, 285 (2018); see also Bowden v. Bayside Prison, 268 N.J. Super. 301, 304 (App. Div. 1993) (holding that "[t]he burden of showing

A-3180-21

the agency's action was arbitrary, unreasonable[,] or capricious rests upon the appellant.").

In reviewing an agency's decision on a question of law, we apply a de novo standard. In re N.J. Dep't of Env't Prot. Conditional Highlands Applicability Determination, 433 N.J. Super. 223, 235 (App. Div. 2013) (citing Russo v. Bd. of Trs., Police & Fireman's Ret. Sys., 206 N.J. 14, 27 (2011)). We are "in no way bound by the agency's . . . determination of a strictly legal issue." Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973). If our review of the record satisfies us the agency's finding is clearly mistaken or erroneous, the decision is not entitled to judicial deference and must be set aside. L.M. v. N.J. Div. of Med. Assistance & Health Servs., 140 N.J. 480, 490 (1995).

Here, the two issues raised on appeal address matters of law. The first issue is whether Mitzner had authority to enter into a settlement on behalf of Valente. The second issue is whether the parties agreed on the essential terms to render the settlement enforceable.

We first address Mitzner's authority to negotiate and enter into a settlement. It is well-settled that "an attorney is presumed to possess authority to act on behalf of the client, and the party asserting the lack of authority must sustain 'a heavy burden to establish that [the] attorney acted without any kind of

authority.'" Jennings v. Reed, 381 N.J. Super. 217, 231 (App. Div. 2005) (citations omitted) (quoting Sun Ins. Co. of Cal. v. Williams, 729 F.2d 581, 583 (8th Cir. 1984)).

We are satisfied there was apparent authority for Mitzner's actions. "Apparent authority arises 'when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.'" AMB Property, LP v. Penn Am. Ins. Co., 418 N.J. Super. 441, 454 (App. Div. 2011) (quoting Restatement (Third) of Agency § 2.01 (2006)).

Based on the June 2021 emails between Mitzner and the Township attorney, Mitzner had apparent authority to enter into the settlement on Valente's behalf. Mitzner's June 15 email to the Township attorney attached a twelve-paragraph settlement document. In his June 16 email, Mitzner confirmed the agreement in the June 15, 2021 email from the Township attorney was "acceptable to Lt. Valente, subject to working out the actual language of preparing a formal Agreement." Under these circumstances, the Township reasonably believed Mitzner had authority to act on Valente's behalf and the Township's belief in Mitzner's authority is supported by the inclusion of Valente's specific settlement conditions in the document.

13

The emails clearly established Valente was not only aware of the settlement discussions but affirmatively accepted the Township's settlement document. The emails, coupled with the non-appearance of Valente and Mitzner at the disciplinary hearing on June 21, 2021, support Mitzner's authority to enter into the settlement on Valente's behalf.

Significantly, Valente offered no evidence, affidavit, or certification in opposition to the Township's motion to enforce the settlement. Valente never provided a certification or any other evidence that Mitzner lacked actual or apparent authority to settle with the Township on his behalf. Nor did Valente offer a certification or affidavit from his previous attorney stating Mitzner had no authority to settle the matter.

Because Mitzner had authority to settle on behalf of Valente, we next consider whether the parties agreed to the essential terms to constitute an enforceable settlement agreement. The burden of proving that the parties entered into a settlement is on the party seeking to enforce the settlement. Amatuzzo v. Kazmiuk, 305 N.J. Super. 469, 475 (App. Div. 1997). Settlements are governed by contract law and require assent to the essential terms to be valid. Cumberland Farms, Inc. v. N.J. Dep't of Envtl. Prot., 447 N.J. Super. 423, 438 (App. Div. 2016) (citing Mosley v. Femina Fashions, Inc., 356 N.J. Super. 118,

126 (App. Div. 2002)).  A contract is enforceable when the parties agree on the essential terms and agree to be bound by those terms.  <u>Weichert Co. Realtors v. Ryan</u>, 128 N.J. 427, 435 (1992).  "Where the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges."  <u>Lahue v. Pio Costa</u>, 263 N.J. Super. 575, 596 (App. Div. 1993) (citing <u>Bistricer v. Bistricer</u>, 231 N.J. Super. 143, 145 (Ch. Div. 1987)).

Here, the document attached to the emails exchanged between Mitzner and the Township attorney contained all of the essential terms of the agreement.  Among the essential terms contained in the document were liability admissions, administrative closure of the charges, terms of employment separation, accrued time, confidentiality, return of property, non-disparagement, and attorney's fees.  Valente never claimed any essential or material terms were missing from the settlement document.

Rather, Valente claimed there was no agreement as to the essential terms because the matter was "subject to review by the mayor."  We reject Valente's contention the matter could not be considered settled until the Township's governing body held a hearing and officially authorized its attorney to execute

the settlement document. Where a municipal attorney has the authorization of the governing body, the attorney may effectuate a settlement. Cf. City of Jersey City v. Roosevelt Stadium Marina, Inc., 210 N.J. 315, 327 (App. Div. 1986) (holding "unauthorized consent of a municipal attorney cannot bind the governing body").

The Township authorized its attorney to enter into settlements on its behalf as part of her appointment as municipal counsel. Although the settlement agreement was pending formal approval by the Township, that did not permit Valente to reject the settlement agreed to by his attorney. If we accepted Valente's reasoning, no agreement reached between a municipal attorney and a litigant prior to municipal approval would be binding, bringing to a halt the favored policy of settlement. We see no support for Valente's argument.

Nor was there a need to conduct a hearing on the motion to enforce the settlement. A plenary hearing is only necessary to resolve genuine issues of material fact. See Eaton v. Grau, 368 N.J. Super. 215, 222 (App. Div. 2004). Here, there were no disputed facts regarding the settlement. Valente submitted no evidence his attorney lacked the authority to negotiate and accept a settlement on his behalf. Therefore, there was no need for a hearing.

A-3180-21

Contrary to the Commission's decision, the fact that the Township conducted a disciplinary hearing, as demanded by Valente's substitute counsel, did not "cut against [the Township's] argument that a valid settlement had been reached." The Commission erroneously concluded "there would be no need for such a hearing if there was truly a settlement."

The Commission's decision lacks support in the record. It is undisputed the Township's July 21, 2021 letter maintained a settlement was reached and placed Valente on notice that the Township would proceed with a hearing on August 11, 2021 without prejudice to claiming the parties had a settlement. In that letter, the Township attorney expressly advised Valente's attorney that the Township was not waiving any rights by conducting a hearing and "reserved the right to continue to assert a settlement has been reached." Additionally, the Township's attorney reiterated this position at the outset of the August 11, 2021 hearing, stating the Township intended to pursue enforcing the settlement, "but in the interest of due process and preserving the record, we've agreed to conduct the hearing this morning."

Having reviewed the record, we are satisfied the Commission's findings of fact lacked substantial evidence in the record and its conclusions were based on a misapplication of the law. Therefore, the Commission's decision was

17

arbitrary, capricious, and unreasonable. Consequently, we reverse the Commission's final order and remand for the entry of a final order affirming the ALJ's decision.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3180-21